265 N.J. Super. 351 (1993)
627 A.2d 170
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
NORMAN ACKER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 17, 1993.
Decided June 25, 1993.
*352 Before Judges J.H. COLEMAN, SHEBELL and CONLEY.
William J. De Marco, attorney for appellant.
Robert J. Del Tufo, Attorney General of New Jersey, attorney for respondent (Nancy A. Hulett, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
The key issue raised in this appeal is whether the prosecutor's summation was so egregious as to require a new trial. We hold that it was.
Defendant was found guilty by a jury on two counts of second-degree sexual assault upon two females who were less than 13 years old, contrary to N.J.S.A. 2C:14-2b, (Counts One and Three); and two counts of fourth-degree endangering the welfare of the same two children, contrary to N.J.S.A. 2C:24-4a, (Counts Two and Four). The trial judge merged Count Two with Count One and sentenced defendant to a custodial term of five years. He also merged Count Four with Count Three and sentenced defendant to a concurrent custodial term of five years. The sentence was stayed pending appeal.
Defendant has raised the following issues in this appeal:
I THE PROSECUTOR EXCEEDED ALL BOUNDS OF PROPRIETY IN HIS OPENING AND CLOSING STATEMENTS AND DEPRIVED THE DEFENDANT OF HIS FEDERAL AND STATE CONSTITUTIONAL RIGHT TO A FAIR TRIAL (PARTIALLY RAISED BELOW).
II THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY PERMITTING TESTIMONY FROM THREE WITNESSES UNDER THE "FRESH COMPLAINT" HEARSAY EXCEPTION WHICH INCULPATED *353 THE DEFENDANT; DEFENDANT'S SIXTH AMENDMENT CONFRONTATION RIGHTS WERE VIOLATED ALONG WITH HIS FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL.
III THE DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL BY THE FAILURE OF THE STATE TO PROVIDE DISCOVERY AND BY THE TRIAL JUDGE REFUSING TO GRANT A CONTINUANCE.
IV THE PROSECUTOR WAS IMPROPERLY ALLOWED TO COMMENT ON THE FAILURE OF THE DEFENDANT TO HAVE AN ALIBI.
V THE TRIAL JUDGE ERRED IN DENYING DEFENDANT'S MOTION TO SEVER COUNTS 1 AND 2 FROM COUNTS 3 AND 4.
VI THE TRIAL JUDGE ERRED IN REFUSING TO GRANT A JUDGMENT OF ACQUITTAL IN FAVOR OF DEFENDANT AS TO COUNTS 1 AND 3; THE STATE FAILED TO ESTABLISH DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT CONTRARY TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND STATE CONSTITUTION.
VII THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR IN THE JURY CHARGE WHICH DEPRIVED DEFENDANT OF HIS FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO A FAIL TRIAL.
VIII THE TRIAL JUDGE ERRED IN NOT GRANTING THE MOTION FOR A NEW TRIAL.
IX THE SENTENCE IMPOSED MUST BE REDUCED AS IT IS MANIFESTLY EXCESSIVE, UNDULY PUNITIVE, AND NOT IN CONFORMANCE WITH THE CRIMINAL CODE AND CASE LAW.

I
Defendant, who was 60 years old at the time, was charged with sexually assaulting M.M.R., who was a friend of defendant's relative, J.A.J.A. also became friendly with the second victim, A.S.C., when they attended day camp together. M.M.R. was age 10 and A.S.C. was 12 years old at the time of the alleged assaults.
M.M.R. testified that she slept over at defendant's house in April 1989. She stated that while she was asleep in bed wearing a long T-shirt and underwear, defendant rubbed her buttocks in a circular motion for what seemed like ten minutes.
On July 12, 1989, A.S.C. spent the night with J.A. and C.F., another female child from day camp, at defendant's home. The three children slept on a pull-out sofa-bed. A.S.C. slept in stretch pants, a skirt and a top which she had been wearing. A.S.C. *354 testified that while she was lying on her side in the bed, defendant put his leg on her legs and pressed his "private parts" against her "backside." She stated further that defendant also rubbed her stomach.

II
Defendant contends that he is entitled to a new trial because the prosecutor's closing argument denigrated the defense, the defendant and defense counsel to such an extent that he was deprived of a fair trial. To support this argument, defendant refers to the following statements made by the prosecutor:
Mr. DeMarco has said things to you that are frankly outrageous. He told you that you would be branding Mr. Acker if you find him guilty of violating these two little girls. You're not branding anybody, ladies and gentlemen. You're vindicating the law. That's what your job is. If he's to be branded as a child molester, he held that brand himself. Don't feel any collective guilt for your verdict in this case, ladies and gentlemen.
* * * * * * * *
You know, we got all this stuff about whether it was April, whether it was March. Mr. DeMarco is all upset that somehow we misled him in thinking it was April. He's the one that asked M.M.R. whether it could possibly have been March or could possibly have been May. He's the one. She's the little girl.
Three and a half months later she doesn't remember exactly what day it was that it happened. But she'll never forget what it was that happened to her. He reconstructed what they did in April. The crux of that testimony, ladies and gentlemen  I think Mrs. Acker admitted it  was that M.M.R. lied. That's what she said on the stand, she must have lied. M.M.R. just made this whole story up? It never happened because I reconstructed what happened in April. I went back in my head three and a half months and using the old Elk's calendar I was able to determine [M.M.R.] never slept here in April.
And then Mr. DeMarco stands up and makes a statement that was absolutely preposterous. If it happened in March or if it happened in May, don't convict Mr. Acker because that would be terribly unfair. He thought this was April, he was charged with it. Unfair to Mr. Acker? Mr. Acker should walk out of here because he sexually molested a girl a day earlier than he thought he was accused of molesting her? That's outrageous, absolutely outrageous.
The prosecutor also argued to the jury that it was the function of the jury to protect the children by stating:
Every group in the country seems to have a spokesman. Now it doesn't make any difference what group, racial groups, religious groups. All kinds of groups *355 have spokesmen, people marching up to the when anyone [sic] offends them except children. We do have some special laws to protect them. Those laws are only as good as the juries that are willing to enforce them. Albeit, it will be a difficult decision if you find him guilty beyond a reasonable doubt to say it, it sure it will. [sic] It's going to be tough. But it's not going to be any tougher than turning your back on these three little kids who did what they were taught to do. They were taught to report it, tell about it. They had the courage to come in here and tell you about it. Give them some justice folks.
At the close of the summation and before the court instructed the jury, defense counsel objected to the latter comment and stated "[t]hat's not what a jury is suppose to be about." Defense counsel argued that the prosecutor's comment meant that if the jury did not enforce the law when a conviction is being sought for sexual misconduct against children, "The law is meaningless, what you're saying is if you don't convict, this law doesn't do anything, this group of people goes unprotected." The judge overruled the objection by stating "I don't believe [the prosecutor] said that the jury was to be the protector of children's rights."
This case is illustrative of what we observed in State v. Watson, 224 N.J. Super. 354, 362, 540 A.2d 875 (App.Div.), certif. denied, 111 N.J. 620, 546 A.2d 537, cert. denied, 488 U.S. 983, 109 S.Ct. 535, 102 L.Ed.2d 566, (1988), that "instances of prosecutorial excesses ... seem to come to this court with numbing frequency." Id. at 363, 540 A.2d 875. As our Supreme Court observed recently in State v. Marshall, 123 N.J. 1, 586 A.2d 85 (1991), "[t]he primary duty of a prosecutor is not to obtain convictions but to see that justice is done.... Thus, `[i]t is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." Id. at 152-53, 586 A.2d 85 (Citations omitted). "A prosecutor willing to engage in proscribed conduct to obtain a conviction ... betrays his oath...." State v. Ramseur, 106 N.J. 123, 324, 524 A.2d 188 (1987). See also State v. Koedatich, 112 N.J. 225, 323, 548 A.2d 939 (1988), cert. denied, 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 803 (1989). We repeat that "[t]he prosecutor is not simply another attorney who happens to represent the State." State v. Marks, 201 N.J. Super. 514, 535, 493 A.2d 596 (App.Div. *356 1985), certif. denied, 102 N.J. 393, 508 A.2d 253 (1986). Rather, "[a]s the representative of the State, his obligation to play fair is as compelling as his responsibility to protect the public." Ibid.
Although a prosecutor has considerable leeway in presenting a summation, State v. Williams, 113 N.J. 393, 447, 550 A.2d 1172 (1988), and he or she is not expected to act in a manner appropriate to a lecture hall, State v. Johnson, 31 N.J. 489, 510-11, 158 A.2d 11 (1960), a prosecutor may not exceed the parameters of "permissibly forceful advocacy" established by decisional law. State v. Marshall, supra, 123 N.J. at 160-61, 586 A.2d 85. See also State v. Perry, 65 N.J. 45, 47, 319 A.2d 474 (1974); State v. Mayberry, 52 N.J. 413, 437, 245 A.2d 481 (1968), cert. denied, 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1969). Our careful study of the record in this case persuades us to conclude that the comments were so egregious, inflammatory and prejudicial as to deny defendant a fair trial. See State v. Marshall, supra, 123 N.J. at 160-61, 586 A.2d 85; State v. Hightower, 120 N.J. 378, 411, 577 A.2d 99 (1990); State v. Johnson, 120 N.J. 263, 296, 576 A.2d 834 (1990); State v. Coyle, 119 N.J. 194, 220-21, 574 A.2d 951 (1990); State v. Pennington, 119 N.J. 547, 576-77, 575 A.2d 816 (1990); State v. Rose, 112 N.J. 454, 520, 548 A.2d 1058 (1988); State v. Ramseur, supra, 106 N.J. at 322-24, 524 A.2d 188; and State v. Kelly, 97 N.J. 178, 218, 478 A.2d 364 (1984); State v. Tirone, 64 N.J. 222, 229, 314 A.2d 601 (1974).
It was highly improper for the prosecutor to characterize the defense attorney and the defense as outrageous, remarkable, absolutely preposterous and absolutely outrageous. "A prosecutor is not permitted to cast unjustified aspersions" on defense counsel or the defense. State v. Lockett, 249 N.J. Super. 428, 434, 592 A.2d 617 (App.Div.), certif. denied, 127 N.J. 553, 606 A.2d 366 (1991). Here, defense counsel was attacked unjustifiably for simply trying to discredit the State's case.
Still more egregious was the prosecutor's argument that it was the function of the jury to protect young victims of alleged sexual offenses as a group. The clear import was that unless the *357 jury convicted defendant, the jurors would violate their oaths. Warnings to a jury about not doing its job is considered to be among the most egregious forms of prosecutorial misconduct. State v. Knight, 63 N.J. 187, 193, 305 A.2d 793 (1973). That argument alone had the clear capacity to deprive defendant of his constitutional right to a fair trial.
Additionally, the prosecutor argued to the jury that defendant was intoxicated at the time of one of the episodes even though the prosecutor knew this was a baseless accusation. He stated: "Mr. Acker came in that night, maybe he had a few toots, who knows, walked into that dark room and saw the little girl lying on the floor and did something that was despicable. That's what happened." The prosecutor was duty bound to confine his comments to facts revealed during the trial and reasonable inferences to be drawn from that evidence. State v. Marks, supra, 201 N.J. Super. at 534, 493 A.2d 596. This was an unfounded attack upon the credibility of defendant's testimony when he denied the charges.
Defendant also complains that it was improper for the prosecutor to argue to the jury that the "charges are inseparable" and that the jury cannot find guilt on some counts and not guilty on others. The prosecutor stated the following in his summation:
But he did some other things that are very bad. Maybe they don't leave any physical scars, but they left scars forever. Please don't say there was no harm, no foul. There was harm. Please don't compromise your verdict, ladies and gentlemen. Don't say to yourselves, well, I think Mr. Acker is guilty beyond all reasonable doubt of all these charges but you know what I'll do, I'll cut him a break and I'll just convict him of half of them or some of them. These charges are inseparable really because it's hard to believe that one girl would be telling the truth about being sexually abused by Mr. Acker and the other one wouldn't. That doesn't really make much sense and it also interlocks because if Mr. Acker did sexual things that gives rise to conviction on endangering the welfare of children. It's the same sexual things that make him guilty of the sexual assault. And for you to say I'm going to split it down the middle and try to make everybody happy here, will make no one happy.
Defense counsel objected to this comment, and the judge assured counsel that he would instruct the jury that "there will be specific verdicts on each count which will be consistent with the evidence and the law." Much more, however, was required.
*358 It was misleading to inform the jury that if the jury believed one of the victims, it essentially had to believe the other. The events alleged occurred months apart and in the presence of at least one additional person. More important, the charges made by the two children were not only separate, but they involved different scenarios. We are therefore persuaded that the cumulative effect of prosecutorial improprieties committed during summation deprived defendant of a constitutionally guaranteed fair trial. State v. Rose, supra, 112 N.J. at 523, 548 A.2d 1058.
We find the remaining issues raised in Points I, II, IV, V, VI and VII are clearly without merit. R. 2:11-3(e)(2). The issues raised in Points III, VIII and IX have been rendered moot in view of our reversal.
The judgment of conviction is reversed and the matter is remanded to the Law Division for a new trial.