[No. 30842-4-I.   Division One.   July 11, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. ROMAN LEE COLEMAN, *Appellant.*

---

*Mary Jane Ferguson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Marilyn A. Nowogroski, Deputy,* for respondent.

COLEMAN, J. — Atwell Coleman appeals his second degree robbery conviction. Coleman argues the prosecutor committed prejudicial misconduct in closing argument. We accelerate review pursuant to RAP 18.12 and affirm.

I

At approximately 1:30 a.m. on February 22, 1992, James Harrington left a party in the Belltown area of Seattle. On the street, two men approached and asked if he wanted to buy some "weed". He had never seen the men before. Harrington said he didn't want any and he kept walking. The men stayed close to him and one of them, Defendant Coleman, leaned into Harrington. By chance, Harrington looked at Coleman's hand and saw that Coleman had his wallet, which contained approximately $50 cash.

Harrington reached behind Coleman's back to grab the wallet, causing them both to fall to the ground. When Harrington asked for his wallet, Coleman tossed it to his friend, Thomas. Thomas began taunting Harrington, holding the wallet in the air out of Harrington's reach. Harrington grabbed Thomas by the arm, demanding his wallet.

Harrington followed Coleman as he walked into a nearby alley, continuing to demand return of his wallet. Coleman responded that the wallet was back in the gutter. Harrington grabbed Coleman and tried to reach into his pocket. Harrington testified that Coleman pushed away his hand and "tensed up" and "sternly said don't touch me. I have a gun". Coleman did not display a gun. Although Harrington felt "defeated" and "scared", he kept asking for return of the wallet.

At this point, Thomas entered the alley and Harrington asked him to return the wallet. Thomas replied that the wallet was in the gutter. The men agreed to return to the area where they claimed the wallet could be found.

However, as they walked out of the alley, Harrington noticed Coleman place the wallet on a ledge. When Harrington recovered the wallet, he noticed the cash was missing. He ran after Coleman and Thomas, demanding his money. They replied they didn't know what he was talking about. Coleman asked Harrington if he wanted the police to get involved; Harrington said that would be fine.

At this point, a fourth individual walked by and warned them to keep it down because the police were around the corner. Coleman and Thomas headed back toward the alley while Harrington ran to find the police.

Harrington contacted a police officer, who immediately broadcast a description. Within minutes, Coleman and Thomas were stopped several blocks away. Harrington identified them as the men who took his wallet. The police found $20 on Coleman and $31 on Thomas.

In closing argument, the prosecutor stated that the critical issue was whether a theft or a robbery occurred. Conceding that the taking of the wallet started as a theft, the

prosecutor argued it became a robbery because implied force was used to retain the wallet. The prosecutor emphasized that in today's world, the mention of a gun is perceived as a serious threat of force.

Defense counsel also characterized the critical issue as whether a theft or robbery took place. Conceding that a theft occurred, defense counsel's argument focused on the lack of force, either threatened or used. Counsel emphasized that Harrington was the one who grabbed Coleman and that Coleman warned he had a gun as means of protecting himself from Harrington's advances, not as a means of retaining the wallet. Counsel also emphasized that Harrington's conduct (grabbing at the men, reaching into Coleman's pocket, following them into the alley) revealed that Harrington perceived no threat to his person, despite his testimony that he was afraid. In short, defense counsel urged the jury to acquit on the robbery and return a verdict on the lesser included offense of first degree theft.

The prosecutor presented a short rebuttal argument, which ended with the following comments:

> It is your job to apply the facts to the law, and we cannot second guess you, and will not second guess you, and if you determine that the only thing that happened here was a theft then that is your judgment. And you are entitled to make it, but I would suggest to you that to do so you have to do two things. And one is to ignore the actual evidence in front of you, and the second is thereby to violate your [oa]th as jurors.

The court overruled defense counsel's immediate objection and subsequent motion for a mistrial.

## II

Coleman argues that by referring to the jury's oath, the prosecutor's comments improperly pressured the jury. The State defends the comments, arguing the prosecutor accurately described the jury's task.

A prosecutor does not commit misconduct by arguing that the jurors would have to disregard the evidence in order to reach a certain result or that to disregard evidence would be in violation of their oath. While the argument here could

be construed as conveying the above, it could also be construed as telling the jury that it would violate its oath if it disagreed with the State's theory of the evidence. Under this construction, the argument would be improper. Because a substantial risk exists that the prosecutor's comments could be so construed, we treat the comments as improper.

■ Because Coleman's trial counsel immediately objected and subsequently moved for a mistrial, Coleman has preserved the issue and the misconduct requires reversal if there is a substantial likelihood that the misconduct affected the verdict. *State v. Padilla*, 69 Wn. App. 295, 301, 846 P.2d 564 (1993).

The parties have not cited, and our independent research has failed to disclose, any Washington cases involving a prosecutor's argument that the jury would violate its oath by adopting the defense theory. Thus, we look to several out-of-state cases in determining whether the instant misconduct calls for reversal.

In *United States v. Young*, 470 U.S. 1, 84 L. Ed. 2d 1, 105 S. Ct. 1038 (1985), the defense counsel attacked the prosecutor's integrity, arguing that not even the government believed its case. The prosecutor responded in kind, arguing that having been asked to give his opinion, he freely offered his belief that the defendant was guilty and that the jury should " 'do its job' ". *Young*, 470 U.S. at 18. The Supreme Court found the prosecutor was "in error to try to exhort the jury to 'do its job'; that kind of pressure, whether by the prosecutor or defense counsel, has no place in the administration of criminal justice". *Young*, 470 U.S. at 18.

In *State v. Acker*, 265 N.J. Super. 351, 627 A.2d 170, *cert. denied*, 134 N.J. 485 (1993), the defendant was charged with sexually assaulting several children. The prosecutor argued that laws prohibiting sexual assault against children "are only as good as the juries that are willing to enforce them" and that the children "had the courage to come in here and tell you about it. Give them some justice folks." *Acker*, at 355. The appellate court found this argument "egregious" because the

clear import was that unless the jury convicted defendant, the jurors would violate their oaths. Warnings to a jury about not doing its job is considered to be among the most egregious forms of prosecutorial misconduct. That argument alone had the clear capacity to deprive defendant of his constitutional right to a fair trial.

(Citation omitted.) *Acker*, at 356-57. Finding fault with several other comments made by the prosecutor during closing, the court reversed and remanded for a new trial.

In *Williams v. State*, 789 P.2d 365 (Alaska Ct. App. 1990), the defendant was charged with four crimes arising out of the kidnapping and beating of his ex-girlfriend. For the first time on appeal, Williams argued that the prosecutor committed numerous instances of misconduct during closing argument. Finding the absence of plain error in the first two allegations of misconduct, the court found the last charge of misconduct "more troublesome". *Williams*, at 369. The prosecutor instructed the jurors to "go back to the jury room and look at the evidence, and talk about the testimony, and do your job and return guilty verdicts in this case." *Williams*, at 369. The court found the argument was improper because it implied that the jury's job was to return a guilty verdict. Nonetheless, the misconduct did not rise to the level of plain error because the jury acquitted Williams of the sexual assault charge, proving that the jury was not improperly influenced by the prosecutor's misconduct.

In *Noel v. State*, 754 P.2d 280 (Alaska Ct. App. 1988), the defendant was charged with fourth degree assault against his wife. Defense counsel objected to several comments made by the prosecutor during closing, including the comment that "that's the charge that you're here to enforce. . . ." *Noel*, at 282. The appellate court found the comments were improper because the prosecutor, "in effect, exhorted the jury to 'do its job.'" in violation of *United States v. Young, supra. Noel*, at 283. Because the prosecutor committed other improprieties during closing argument, the court reversed the conviction.

We trust that prosecutors will take these decisions to heart and will, in the future, refrain from making argument

to the jury that it would violate its oath by accepting the defense theory of the case. We cannot emphasize enough the unnecessary risk of reversal that such argument creates.

■ Turning to this case, unlike the cases cited, which involved multiple instances of prosecutorial misconduct, this case involved only a single instance of misconduct. While we do not condone the prosecutor's improper comments, we find that they were tempered by her immediately preceding comments that "we cannot second guess you, and will not second guess you, and if you determine that the only thing that happened here was a theft then that is your judgment." We are confident that these comments, which plainly instructed the jury that its verdict would be honored, outweighed the prosecutor's improper comments. In addition, even though the trial judge erred by not recognizing the risk of misinterpretation, the trial judge was still in the best position to assess whether the prosecutor was attempting to threaten the jury. We do not have the benefit of observing either the prosecutor's tone of voice or demeanor. The trial judge did. Finally, while the issue to be resolved by the jury was debatable, we are confident that the jury was guided by the weight of the evidence, not the prosecutor's improper comments. In short, we do not find there is a substantial likelihood that the misconduct affected the verdict.

We affirm.

SCHOLFIELD, J., concurs.

PEKELIS, A.C.J. (dissenting) — The majority concedes that the prosecutor committed serious misconduct by arguing that in order to accept the defense theory of the case and find the Defendant guilty only of theft, the jury would have to violate their oath as jurors. I dissent because I strongly disagree with the majority's conclusion that this was merely harmless error.

As the authorities cited by the majority uniformly hold, a prosecutor commits blatant misconduct by telling the jurors

they would violate their oath by adopting the defense theory of the case. By placing highly inappropriate pressure on the jury, such comments constitute implicit threats to the jury, and they have no place in a prosecutor's closing argument.

This type of misconduct is so egregious that it can require reversal in and of itself. *State v. Acker*, 265 N.J. Super. 351, 356-57, 627 A.2d 170, 173, *cert. denied*, 134 N.J. 485 (1993). Here, additional circumstances actually compounded the error. First, despite the egregious nature of the prosecutor's misconduct, the trial court overruled defense counsel's immediate objection. Thus, rather than correcting the error, the court left the jury to mistakenly conclude that the prosecutor's reference to its oath was entirely legitimate. Second, the misconduct came at the very end of the prosecutor's rebuttal, making the prosecutor's improper comments the last words the jury heard before beginning its deliberations.

This court's opinion in *State v. Powell*, 62 Wn. App. 914, 919, 816 P.2d 86 (1991), *review denied*, 118 Wn.2d 1013 (1992) underscores the importance of these circumstances. In *Powell*, the prosecutor argued that an acquittal would send a message that children reporting sexual abuse are not going to be believed, thereby " 'declaring open season on children' ". *Powell*, at 918. The defense attorney objected and the trial court *sustained* the objection. On appeal, the State argued that because the objection had been sustained, the misconduct was not prejudicial. This court disagreed and reversed, reasoning: "The remarks were made at the completion of the final closing argument, immediately prior to the jury beginning its deliberations. This is one of those cases of prosecutorial misconduct in which '[t]he bell once rung cannot be unrung.' " *Powell*, at 919 (quoting *State v. Trickel*, 16 Wn. App. 18, 30, 553 P.2d 139 (1976)).

Here, too, the bell was rung at the very end of the trial just before the jury began deliberations. However, this case is even more egregious than *Powell* because in this case the trial court gave its official stamp of approval to the misconduct by *overruling* the defense attorney's prompt and proper objection to the comments.

Finally, in order to put the misconduct in context, it is essential to focus on the fact that this case turned on a single question — whether Coleman should be found guilty of robbery or of the lesser included offense of theft. Because there were facts that would allow the jury to decide this either way, it was a very close question. The jurors' task was to focus on the evidence, not the potential risk to themselves, in deciding the case. Telling the jury it would violate its oath by accepting the defense theory that the Defendant merely committed theft, not robbery, went to the heart of the issue before the jury.

Given that the court, in the jury's presence, overruled defense counsel's objection, the fact that the improper argument was literally the last words the jury heard before deliberating and the close factual question that the jury had to decide, the error cannot be deemed harmless. Yet the majority so concludes, holding that the prosecutor's improper argument was tempered by her preceding comments that the jury's verdict would not be second-guessed. I fail to see how this in any way mitigates the particular prejudice engendered by this type of misconduct. All that the preceding comments conveyed to the jury was the fact that the verdict would be binding as to the fate of the *Defendant*; the comments did nothing to address the fate of the *jury* should it choose to violate its oath by adopting the defense theory of the case.

How can we say with any degree of confidence that the jury did not take the line of least resistance and simply find the Defendant guilty of the greater offense in order to avoid worrying about whether it was violating its oath? After all, by overruling defense counsel's objection, the trial judge had let the jury know that the prosecutor's comment was *not* a misstatement of the law.

In short, it simply cannot be said that the prosecutor's blatant misconduct did not affect the verdict when all indications point to the contrary. I would reverse and remand for a new trial.

Review denied at 125 Wn. 2d 1017 (1995).