# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2303-17T3

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

ARTHUR F. WILDGOOSE,

 Defendant-Appellant.

_____

Submitted November 28, 2018 – Decided December 24, 2018

Before Judges Koblitz, Currier and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 16-03-0148.

Wronko Loewen Benucci, attorneys for appellant (Gilbert G. Miller, on the brief).

Michael H. Robertson, Somerset County Prosecutor, attorney for respondent (Paul H. Heinzel, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Arthur Wildgoose of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). He appeals from his January 11, 2018, conviction and aggregate sentence of thirty years in prison with an 85% parole disqualifier, pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

Defendant, thirty-two years old at the time of the incident, was convicted of having a sexual relationship with a twelve-year-old girl, B.P.[1], for one month that culminated in an act of vaginal penetration. Defendant had befriended B.P's mother, C.P. He became close with C.P.'s family, eventually sleeping over at C.P.'s home on several occasions, during one of which defendant committed the act of penetration. At trial, the relationship was corroborated by more than 2,000 text messages between defendant and B.P.

Defendant argues the following errors by the trial court, which were not objected to at trial, require reversal of his conviction: (1)(a) the incorrect date in the indictment; (1)(b) the definition of "sexual penetration" in the jury instruction; (2) the lack of instruction on a lesser-included offense; and (3)

---

[1] We use initials to identify the child and her mother to preserve the confidentiality of the victim. R. 1:38-3(c)(12).

prosecutorial misconduct.  After reviewing the record in light of the contentions advanced on appeal, we affirm.

## I. Trial

The trial revealed the following facts.  In December 2014, defendant met C.P. and her children while defendant and C.P. coached youth basketball in the same gym.  Defendant was a divorced father of two young children.  C.P. was a single mother of three girls including eleven-year-old B.P.  Defendant and C.P. began socializing, and defendant invited C.P. and B.P. to play basketball with him and other people in February 2015.

Defendant visited C.P. for Sunday family dinners and spent entire weekends at C.P.'s home, with at least one of C.P.'s daughters always present.  C.P. developed a romantic interest in defendant, but defendant repeatedly told her that although he was interested in her also, they would "have to find time to do that when [they] don't have the kids," or when they had free time, which was limited because of their busy lives as single parents.  Defendant and C.P. never went on a date alone or pursued a sexual relationship, and their activities always included C.P.'s children and sometimes defendant's children as well.

Defendant took an interest in helping B.P. with basketball.  He went to the gym and watched B.P. practice after which B.P. stayed with defendant until he

3

brought her home.  Defendant, a tow truck operator, took B.P. with him on calls. He also took B.P. with him to spread birdseed and apples to attract deer where he hunted.

In April 2015, B.P. turned twelve.  Defendant asked C.P. to bring B.P. to his house so he could give B.P. a six-foot teddy bear that smelled of defendant's cologne as well as balloons, a Yankees shirt and lottery tickets.  The birthday card read: "Happy Birthday, [B.P.].  I hope you have an amazing day!  I hope you got everything you wanted.  Have a happy birthday!!! Love AJ XOXOXO."

In October 2015, B.P. and defendant began texting through her cell phone. Defendant asked B.P. if she would be his girlfriend, and she responded yes.  B.P. testified that this made her feel "very important and special because, um, an older person wanted to be with me."  Defendant called her "beautiful," and referred to her as "babe" and "baby."  Defendant told B.P. that he loved her multiple times a day, both in person and through text messages, and B.P. responded that she loved him too.  Defendant told B.P. that he "wanted her," missed her, and wished he could see her more.  Defendant expressed to B.P. in text messages how it "sucks" that they cannot walk around as a couple because he would get in trouble.  Defendant told B.P., "we can't tell anybody about this," and "[y]ou can't tell mom.  Don't tell her.  Like don't tell her anything."  B.P.

A-2303-17T3

testified that defendant instructed her every day to "delete everything," because "he knows [her] mom checks [her] phone and she would see everything that [they] were talking about."

In November 2015, defendant began rubbing B.P.'s back, shoulders, arms and stomach, and kissing B.P. on the cheek and lips while they were alone in C.P.'s basement. Defendant told her he could go to jail if anyone found out about what he was doing with her. B.P. developed a canker sore on her tongue when defendant simultaneously had a sore on his mouth. C.P. confronted defendant, asking if he had been kissing her daughter, and defendant denied having done so.

Between November 12 and 13, 2015, defendant and B.P. discussed their excitement regarding defendant's upcoming sleepover at C.P's house, and how they wanted to have a baby together. Defendant sent a text to B.P. saying:

> I really do like you. There isn't a minute that goes by and I don't think about you. If anything happens then it does. If we are both in the mood then it's right. Our child will look beautiful. I want the baby to look like you cause you are gorgeous. I just want the baby to have my last name.

Defendant asked B.P.: "How bad you want me?" to which B.P. responded: "Really bad." Defendant then asked: "You want me in you?" to which B.P. responded: "I don't know." More text messages followed regarding what B.P.'s

5

mother would say if B.P. became pregnant, and defendant sent text messages saying: "She won't know about the sex unless you tell her," and "Please delete."

B.P. testified that on Friday, November 13, 2015, while defendant was sleeping over at C.P.'s home with his two children, defendant pulled her from the air mattress onto the futon with him and vaginally penetrated her. B.P. testified that defendant kissed her stomach, arms, and lips, and "then he started taking my pants down and he grabbed my hand and put it on his penis and made me touch him. And, um, I pulled away because I didn't want to. And then he rolled me over on to my side and then, um, he penetrated me." She noted that her back was to him, and she knew she had been penetrated because "it was kind of like how a tampon felt. That's how I knew his penis was in my vagina." Defendant then looked up the Plan B pill on his phone, handed his phone to B.P., and B.P. read about how Plan B is used to prevent pregnancy. Defendant told B.P. he could get it for her from a pharmacy the next day. None of the other children stirred or awoke.

The next day, defendant approached B.P. after her soccer game, while C.P. was coaching on the field, and gave B.P. a loose pill that he told her was the

Plan B pill, which B.P. took.[2]  Defendant sent a text message saying: "You have to let me know when you get your period."  Other text messages between defendant and B.P. concerning sexual behavior and defendant's efforts to maintain secrecy were shown to the jury.

The following month, B.P. approached her mother visibly upset and crying, and told her that defendant took her virginity.  C.P. contacted the police. In March 2016, B.P. attempted suicide and spent twenty-four hours in the hospital.

Defendant argues on appeal:

> POINT I:  THE TRIAL COURT'S FAILURE TO AMEND THE INDICTMENT AND CORRESPONDING LANGUAGE OF THE JURY INSTRUCTIONS TO ALLEGE ONE ACT OF SEXUAL PENETRATION ON NOVEMBER 13, 2015, COMBINED WITH THE COURT'S FAILURE TO PROVIDE A SIMPLE AFFIRMATIVE RESPONSE TO THE JURY'S QUESTION WHETHER IT NEEDED TO FIND PENILE PENETRATION TO SATISFY THE SEXUAL PENETRATION ELEMENT OF AGGRAVATED SEXUAL ASSAULT AND GIVING INSTEAD A RE-INSTRUCTION ON PENETRATION WHICH INCLUDED VARIOUS SEXUAL INSERTIONS THAT WERE NOT IN EVIDENCE,

---

[2]  Video surveillance of a pharmacy in Bridgewater from the morning of November 14, 2015, shows defendant pulling into the parking lot, walking straight to the aisle where Plan B pills are displayed, pausing for a moment and then exiting.

7

IMPERMISSIBLY POSED A DANGER OF A VERDICT BASED ON SPECULATION AS TO WHEN AND WHAT TYPE OF PENETRATION WAS COMMITTED INSTEAD OF ON THE EVIDENCE PRESENTED.

POINT II: THE TRIAL COURT PLAINLY ERRED IN NOT INSTRUCTING THE JURY SUA SPONTE THAT IT NEEDED TO CONSIDER SECOND DEGREE SEXUAL ASSAULT AS A LESSER-INCLUDED OFFENSE OF AGGRAVATED SEXUAL ASSAULT. (NOT RAISED BELOW)

POINT III: THE PROSECUTOR ENGAGED IN MISCONDUCT ON SUMMATION WHICH DEPRIVED MR. WILDGOOSE OF A FAIR TRIAL. (NOT RAISED BELOW)

POINT IV: MR. WILDGOOSE'S SENTENCE WAS MANIFESTLY EXCESSIVE AND MUST THEREFORE BE VACATED.

## II. Indictment

First, defendant argues on appeal that the trial court erred in denying his midtrial motion, made after the indictment was read and evidence presented to the jury, to amend the indictment because it provided a date range suggesting multiple instances of penetration. Second, in the same point, defendant argues that the trial court erred by giving an instruction to the jury on penetration that included various methods of sexual penetration not suggested by the evidence,

contending that this instruction allowed the jury to base the verdict on speculation as to what type of penetration took place.

When an indictment charges a sex crime against a child victim, a charging document need not specify the date of abuse so long as the indictment otherwise gives the defendant sufficient notice of the crime to prepare a defense. State v. Salter, 425 N.J. Super. 504, 514-15 (App. Div. 2012) (citing State in the Interest of K.A.W., 104 N.J. 112, 120 (1986)). Moreover, objections based on defects in the indictment, barring certain inapplicable exceptions, must be raised before trial and are otherwise waived, unless the court grants relief from the waiver for good cause. R. 3:10-2(c).

Here, the indictment reads:

> from on or about the 1st day of October, 2015 to on or about the 29th day of November, 2015 . . . [defendant] knowingly did commit an act of sexual penetration upon one "Jane Doe" (D.O.B. 4/7/2003) when Jane Doe was less than 13 years old, contrary to the provisions of N.J.S.A. 2C:14-2a(1) . . . .
>
> [(Emphasis added).]

The prosecutor referred to a single act of penetration at trial, stating to the jury that "defendant had sexual intercourse with [B.P.] on the night of Friday, November 13, 2015." The prosecutor discussed texts exchanged in the days following Friday, November 13, which referred to wanting "to do again what we

9

did last Friday," and how the following weekend involved a brief touching of defendant's penis. The prosecutor presented evidence to suggest penile penetration, such as the discussion of Plan B pills and pregnancy, and closed by stating to the jury "that's the night he penetrated her with his penis. Okay? And you'll see this evidence of the sexual talk that day."

The trial court noted defendant did not file a motion to dismiss the indictment or seek a bill of particulars pursuant to Rule 3:7-5. We agree with the trial court that defendant was "given adequate notice through the discovery process," and was aware of the nature of the charges when he was first arrested. See K.A.W., 104 N.J. at 120.

Regarding defendant's second argument, pertaining to the jury instruction on sexual penetration, "[a]n essential ingredient of a fair trial is that a jury receive adequate and understandable instructions." State v. McKinney, 223 N.J. 475, 495 (2015) (quoting State v. Afanador, 151 N.J. 41, 54 (1997)). "[T]he test to be applied . . . is whether the charge as a whole is misleading, or sets forth accurately and fairly the controlling principles of law." McKinney, 223 N.J. at 496 (quoting State v. Jackmon, 305 N.J. Super. 274, 299 (App. Div. 1997)).

The evidence and focus by counsel for both parties throughout trial centered on one instance of penile penetration. The trial court instructed the jury, consistent with the definition in N.J.S.A. 2C:14-1(c):

> The first element that the State must prove beyond a reasonable doubt is that [defendant] committed an act of sexual penetration with [B.P.]. According to the law, vaginal intercourse between persons constitutes sexual penetration. Any amount of insertion, however slight, constitutes penetration. That is, the depth of insertion is not relevant. The definition of vaginal intercourse is the penetration of the vagina, or of the space between the labia majora, or outer lips of the vulva.

During jury deliberations, the jury asked the court: "Does 'vaginal intercourse' require that the penetration be done with a penis?" Without the jury present, the trial court read aloud to counsel for both parties: "according to the law, vaginal intercourse, cunnilingus, fellatio -- and I'll just read the whole thing, anal intercourse between persons, or insertion of a hand, finger, or object into the anus, or vagina, either by the defendant, or by another person upon the defendant's instruction, constitutes sexual penetration."[3] Defense counsel did not object to the clarification, but did express his reservations: "I guess. The problem I have is there's zero evidence that it's anything but a penis. I don't

---

[3] This language comes from N.J.S.A. 2C:14-1(c).

11

know where they're going with it.  Your Honor's recital is an accurate recital of the law."  The trial court proceeded to instruct the jury as it suggested.

Any error in the court's instruction is "harmless unless, in light of the record as a whole, there is a 'possibility that it led to an unjust verdict' -- that is, a possibility 'sufficient to raise a reasonable doubt' that 'the error led the jury to a result it otherwise might not have reached.'"  State v. J.L.G., 234 N.J. 265, 306 (2018) (quoting State v. Macon, 57 N.J. 325, 335-36 (1971)) (finding error harmless "in light of the overwhelming evidence of defendant's guilt").

Defendant argues that the trial court had a duty to instruct the jury only on the law applicable to the facts developed at trial, however the charge was responsive to a question from the jury.  "Our jurisprudence does not allow us to conjecture regarding the nature of the deliberations in the jury room."  State v. Muhammad, 182 N.J. 551, 578 (2005).  Defense counsel made no alternate request in response to the jury's question.  It is within "the sound discretion of the trial judge to decide when and how to comment on the evidence."  State v. Pigueiras, 344 N.J. Super. 297, 317 (App. Div. 2001).  An accurate definition of sexual penetration in response to a jury question does not constitute error that "led the jury to a result it otherwise might not have reached," especially "in light

of the overwhelming evidence of defendant's guilt." See N.J.S.A. 2C:14-1(c); see also J.L.G., 234 N.J. at 306.

### III. Lesser Included Offenses

Defendant argues on appeal that he was denied a fair trial because the trial court did not sua sponte instruct the jury to consider second-degree sexual assault as a lesser-included offense of aggravated sexual assault.

Pursuant to the plain error rule, where an error has not been brought to the trial court's attention, the appellate court will not reverse on the ground of such error unless the error is "clearly capable of producing an unjust result." R. 2:10-2. Our Supreme Court has stated: "When a party does not object to a jury instruction, this Court reviews the instruction for plain error." State v. Montalvo, 229 N.J. 300, 320 (2017) (citing R. 1:7-2).

"The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." N.J.S.A. 2C:1-8(e). Therefore, "to justify a lesser included offense instruction, a rational basis must exist in the evidence for a jury to acquit the defendant of the greater offense as well as to convict the defendant of the lesser, unindicted offense." State v. Savage, 172 N.J. 374, 396 (2002). "When the parties to a criminal proceeding do not request that a lesser-included offense

13

. . . be charged, the charge should be delivered to the jury only when there is 'obvious record support for such [a] charge . . . .'" State v. Funderburg, 225 N.J. 66, 81 (2016) (quoting State v. Powell, 84 N.J. 305, 319 (1980)).

> Thus, when the defendant fails to ask for a charge on lesser-included offenses, the court is not obliged to sift meticulously through the record in search of any combination of facts supporting a lesser-included charge. Only if the record clearly indicates a lesser-included charge -- that is, if the evidence is jumping off the page -- must the court give the required instruction.
>
> [State v. Denofa, 187 N.J. 24, 42 (2006) (citations omitted).]

The jury was instructed that defendant had been charged with both first-degree aggravated sexual assault and third-degree endangering the welfare of a child.[4] Second-degree assault would have been established by showing that defendant engaged in sexual contact with B.P. See N.J.S.A. 2C:14-2(b). The evidential basis for the aggravated sexual assault charge was B.P.'s testimony that defendant vaginally penetrated her. The defense was not that defendant had committed sexual contact without penetration. No evidence "clearly indicated" second-degree sexual assault rather than the more serious first-degree charge.

---

[4] Third-degree endangering the welfare of a child is "sexual conduct which would impair or debauch the morals of the child . . . ." N.J.S.A. 2C:24-4(a)(1).

A-2303-17T3

See Powell, 84 N.J. at 318; see also Denofa, 187 N.J. at 42. The trial court was under no obligation to sua sponte charge the lesser-included offense.

## IV. Prosecutorial Misconduct

Also as plain error, defendant argues that he was deprived of a fair trial because the prosecutor should not have interjected "her personal assessment" of evidence, citing State v. Acker, 265 N.J. Super. 351, 357 (App. Div. 1993) (a prosecutor may not argue conclusions not reasonably drawn from the evidence or which rely upon a false foundation) and State v. Feaster, 156 N.J. 1, 59 (1998) (a prosecutor may not impart personal knowledge of facts not in evidence). Defendant refers to the prosecutor's explanation of her failure to present any text messages from November 14, 2015, the day after the alleged penile penetration. She told the jury on summation that the texts were omitted to avoid cumulative evidence. Defendant alleges that the prosecutor's summation unfairly denied defendant the opportunity to draw reasonable doubt from the omission of those text messages.

"We afford prosecutors considerable leeway in closing arguments so long as their comments are reasonably related to the scope of the evidence presented." State v. Timmendequas, 161 N.J. 515, 587 (1999). A new trial is required only if the comment was "'clearly and unmistakably improper,' and must have

substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense." State v. Wakefield, 190 N.J. 397, 438 (2007) (quoting State v. Papasavvas, 163 N.J. 565, 616 (2000)). Moreover, a defendant's failure to object to the prosecutor's summation "indicates that he did not, in the context of the proofs, deem them prejudicial or improper." State v. Patterson, 435 N.J. Super. 498, 509 (App. Div. 2014) (quoting State v. Farr, 183 N.J. Super. 463, 469 (App. Div. 1982)).

During defense counsel's summation, he invited the jury to draw reasonable doubt from the prosecutor's omission of text messages from the day following the alleged penetration:

> [DEFENSE COUNSEL]: But on the 14th, we know, [B.P.] told you, [defendant] and I texted. Her mother said, we texted. Why? Out of all the texts, those are the texts you don't have. I submit that goes towards what's called reasonable doubt. Why don't you have them? Just take a look at what could possibly be contained –
>
> [PROSECUTOR]: Objection.
>
> THE COURT: Side bar.
>
> [PROSECUTOR]: That's speculation, because what could possibly be contained, in reality, if the Defendant had read the text [sic]. I can't comment on his failure to introduce that which he was provided in discovery. But they shouldn't be invited to think about what could

possibly be contained, because they're told they're not allowed to base their decision on blind speculation.

THE COURT: Well, this is summation. I think he can argue what he wants, and you can respond to it, so I'm going to allow him to do that.

[(Emphasis added).]

During the prosecutor's summation, she read the contents of several text messages spanning several dates. She then noted the need for practicality, and responded to defendant's invitation for the jury to speculate as to the absence of the text messages from the day after the alleged penile penetration:

> You can see, in an effort to read the entire conversation, how it can be tedious, because there's a lot that's just banter back and forth. And that's why every text I present to you, the relationship would have been impossible [sic]. The defendant would have you hold that against the State as hiding something. I submit to you, it's just a practicality. By the end of this case, if you don't know already, you will, this relationship is what the State has presented it to be, through the witnesses and through the texts. It's just a matter of practicality. You can't have 20,000 texts, but I submit to you have [sic] plenty here.

The prosecutor thus responded to defendant's direct attack during his summation, as the trial court invited her to do, and without objection from defense counsel. See State v. McGuire, 419 N.J. Super. 88, 145 (App. Div. 2011) ("A prosecutor's otherwise prejudicial arguments may be deemed

harmless if made in response to defense arguments."). The prosecutor's arguments were not made in reliance on a false foundation or for the purpose of imparting personal knowledge of facts not in evidence. See Acker, 265 N.J. Super. at 357; see also Feaster, 156 N.J. at 59. The prosecutor's conduct was not "clearly and unmistakably improper," nor did it render the jury incapable of "fairly evaluat[ing] the merits of [defendant's] defense." See Wakefield, 190 N.J. at 438. To the contrary, the prosecutor "did no more than balance the scales." See State v. Munoz, 340 N.J. Super. 204, 216 (App. Div. 2001). Her summation did not constitute error "clearly capable of producing an unjust result." See R. 2:10-2.

## V. Sentence

Defendant argues on appeal that his thirty-year NERA sentence is manifestly excessive and the matter should be remanded for re-sentencing. He contends that the trial court "was placing a burden of production upon him" and "penalizing him for availing himself of his constitutional right to assert his innocence." In determining whether a sentence is excessive, "[t]he reviewing court is expected to assess the aggravating and mitigating factors to determine whether they 'were based upon competent credible evidence in the record.'"

State v. Bieniek, 200 N.J. 601, 608 (2010) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

> An appellate court is not to substitute its assessment of aggravating and mitigating factors for that of the trial court. However, when an appellate court determines that the trial court has found aggravating and mitigating factors unsupported by the record, the appellate court can intervene and disturb such a sentence with a remand for resentencing.
>
> [Ibid. (citation omitted).]

The only exception arises where a sentence "shocks the judicial conscience." State v. Blackmon, 202 N.J. 283, 297 (2010) (quoting Roth, 95 N.J. at 364). For example, in State v. Rivers, 252 N.J. Super. 142, 153 (App. Div. 1991), where the jury convicted the defendant of multiple crimes involving a gun, we found the "[d]efendant's consistent denial of involvement and his lack of remorse indicate that a prison sentence is necessary to deter defendant from similar conduct in the future, and therefore, the trial court properly found aggravating factor N.J.S.A. 2C:44-1a(9) [deterrence]." Id. at 154.

The trial court was required to sentence defendant to a minimum of twenty-five years in prison with twenty-five years of parole disqualification. N.J.S.A. 2C:14-2(a). The sex offender psychological examination required under N.J.S.A. 2C:47-1 found "insufficient psychological evidence to conclude

that [defendant] felt irresistibly compelled to commit the present offenses" and thus he was "not eligible for sentencing under the purview of the New Jersey Sex Offender Act." The trial court imposed a thirty-year sentence with an 85% parole disqualifier, and a concurrent five-year sentence for endangering the welfare of a child. The court found as a mitigating factor defendant's lack of a prior record, N.J.S.A. 2C:44-1(b)(7). The trial court found aggravating factors three, the risk of recidivism, N.J.S.A. 2C:44-1(a)(3), and nine, the need for deterrence, N.J.S.A. 2C:44(1)(a)(9), outweighed the single mitigating factor. Similar to Rivers, the trial court based these findings on defendant's lack of remorse or acceptance of responsibility, given his admission to sending the sexually explicit text messages but denial of sexually assaulting B.P. and his attempt to explain away the text messages to the presentence investigator. See Rivers, 252 N.J. Super. at 153-54. Furthermore, the trial court noted that defendant's "grooming" of the victim and his repeated "delete everything," commands to B.P. "fully support a conclusion that [defendant] knew what [he was] doing was wrong." The trial court found that "[a] significant period of incarceration is required for the protection of the public."

The sentence imposed an additional six-month mandatory minimum to the required statutory minimum. In light of the victim's suicide attempt, presumably

as a result of defendant's assault, the additional time in prison does not "shock[] the judicial conscience." See Blackmon, 202 N.J. at 297. The trial court's sentencing determination was predicated on "competent credible evidence in the record," and thus defendant's sentence is not manifestly excessive. See Bieniek, 200 N.J. at 608.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21