FILED
COURT OF APPEALS
DIVISION II

2014 AUG -5 AM 10: 39

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44192-6-II |
| Respondent, | |
| v. | |
| BILLIE JO CROSS, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, J. — Billie Jo Cross appeals her jury trial conviction for third degree assault of a law enforcement officer. She argues that (1) the to convict jury instruction omitted essential elements of one of the charged alternative means, (2) the trial court erred in failing to give a unanimity-as-to-means instruction, (3) her counsel provided ineffective assistance, and (4) the State engaged in prosecutorial misconduct during closing argument. We affirm.

FACTS

I. THE ASSAULT

On April 30, 2012, Kitsap County Deputy Sheriff Eric Adams drove his marked patrol car to Billie Jo Cross's residence to serve some civil court papers on her husband and to arrest him for two outstanding arrest warrants. When Cross answered the door, Adams, in uniform,

told her that he was there to serve her husband with some paperwork that he (Adams) had to give to her husband in person. After calling for her husband and getting no response, Cross told Adams that her husband was not there and that he (Adams) should return the next day.

The next day, Adams and Kitsap County Deputy Sheriff Steven Argyle returned, again in uniform and driving marked patrol cars. Adams again told Cross that he was there to serve papers on her husband. After showing Cross the papers, Adams asked her to step outside onto the deck. Cross "yelled" into the house that the deputy had paperwork concerning child support and then told Adams that she and her husband had been "afraid that [Adams] was there to arrest [her husband] on a warrant." Report of Proceedings (RP) (Oct. 30, 2012) at 28. Adams responded that he did not know what she was talking about.

When Cross's husband came to the door, Adams served him with the paperwork and then told him that he needed to come outside onto the deck. When it appeared that he was not going to comply, Adams reached out to grab him and Cross's husband "slammed" the door on Adams' hand. RP (Oct. 30, 2012) at 31. Adams attempted to "breach the door by kicking it in" and shouldering the door while shouting, "'You are under arrest.'" RP (Oct. 30, 2012) at 31.

At this point, Cross said, "'You lied to me,'" "jumped on [Adams'] back and grabbed her arms around [his] neck," and attempted to pull Adams back from the door. RP (Oct. 30, 2012) at 31, 33. Argyle pulled Cross off Adams, and Adams managed to enter the home. Argyle arrested Cross. As Argyle walked her to his patrol car, she stated, "[S]he had no other choice but

2

to do what she did because the male that she had just tried to protect was her husband."[1] RP (Oct. 30, 2012) at 58.

## II. PROCEDURE

The State charged Cross with third degree assault, alleging three means of committing this crime:

> On or about May 1, 2012, in the County of Kitsap, State of Washington, the above-named Defendant, (1) with intent to prevent or resist the execution of any lawful process or mandate of any court officer or the lawful apprehension or detention of himself or herself or another person, did assault another; and/or (2) did assault a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault; and/or (3) . . . did assault a peace officer with a projectile stun gun; to wit: ERIC L. ADAMS.

Clerk's Papers (CP) at 1.

### A. Trial Testimony

Adams and Argyle testified as described above. The State presented no other witnesses.

Cross testified that when Adams arrived at her home the second time, he was in uniform and she knew he was there for some official reason. Adams told her that he was there to serve papers on her husband, but she started to "wonder[ ] . . .what was going on" when Adams put the papers in his back pocket as her husband came to the door. RP (Oct. 30, 3012) at 64. Cross stated that as Adams reached for her husband, she attempted to grab Adams' elbow to tell him to stop because there were dogs inside the residence, but she "caught his vest" instead and did not "really know what [she] did" at that point. RP (Oct. 30, 2012) at 67. She was also concerned

---

[1] The deputies did not find Cross's husband.

3

No. 44192-6-II

that Adams was "punching holes in the door" and that he might shoot her dogs. RP (Oct. 30, 2012) at 67.

### B. Jury Instructions

The trial court gave the jury a definitional instruction, number 6, which included two means of committing third degree assault (assault of officer to resist/prevent arrest or while performing official duties):

> A person commits the crime of assault in the third degree when he or she assaults another with intent to prevent or resist the execution of any lawful process or mandate of any court officer or the lawful apprehension or detention of himself, herself, or another person, or assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault.

CP at 48 (Jury Instruction 6).

The to convict instruction, number 7, however, referred to only one of those means (assault of law enforcement officer performing official duties):

> To convict the defendant of the crime of assault in the third degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1)     That on or about May 1, 2012, the defendant assaulted Eric Adams;
> (2)     That at the time of the assault Eric Adams was a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties; and
> (3)     That any of these acts occurred in the State of Washington.

CP at 50 (Jury Instruction 7). Cross did not object to either instruction. Nor did she request an additional unanimity-as-to-means instruction or submission of special verdicts to the jury.

### C. Closing Arguments

The State's closing arguments focused on whether Cross had assaulted Officer Adams. The State mentioned two of the charged means: (1) assault with intent to prevent or resist the

4

lawful apprehension or detention of Cross's husband, and (2) assault of a law enforcement officer who was performing his official duties at the time of the assault. Much of the State's argument focused on Cross's surprise by Adams' ruse and his attempt to enter the residence, which did not give her authority to assault Adams or otherwise to interfere with his efforts to arrest her husband.[2] Cross did not object to any of the State's arguments.

Cross's counsel's argument focused almost exclusively on the assault with intent to prevent or to resist the arrest of her husband. Specifically, he argued that Cross had not intended to "try and stop the process of the officer going about the course of his business with her husband." RP (Oct. 30, 2012) at 83.

The jury found Cross guilty of third degree assault. Cross appeals.

## ANALYSIS

### I. JURY INSTRUCTIONS

For the first time on appeal, Cross challenges the jury instructions on two grounds. She argues that (1) by referring to only a single charged means, the to convict instruction omitted essential elements of the crime; and (2) the trial court erred in failing to give an additional unanimity-as-to-means instruction sua sponte.[3] These arguments fail.

---

[2] We describe the relevant portions of this argument in more detail below.

[3] Cross asserts that she can raise these issues for the first time on appeal under the "manifest constitutional error" exception to the preservation requirement. *See* RAP 2.5(a) ("The appellate court *may* refuse to review any claim of error which was not raised in the trial court." (Emphasis added.)  And the State does not argue that we cannot reach these issues because Cross failed to object below. Therefore, we address these issues without further RAP 2.5(a) analysis.

## A. No Omission of Essential Elements

Cross first argues that the to convict jury instruction, jury instruction 7, omitted essential elements of the charged crime because it omitted the elements of one of the two alternative means that the State discussed in closing argument and that were mentioned in the definitional instruction, jury instruction 6. She contends that the to convict instruction's omission of the elements of intent to prevent or to resist apprehension or detention means likely confused the jury in light of (1) the information, which contained all three means and was read to the jury; (2) jury instruction 6, which defined both an assault of a law enforcement officer who was performing his official duties and an assault with intent to prevent or to resist the lawful apprehension or detention of another person; and (3) the closing arguments, during which the parties mentioned both means that jury instruction 6 described. We disagree.

Criminal defendants have a right to a unanimous jury verdict. WASH. CONST. art. I, § 21. "In certain situations, the right to a unanimous jury trial also includes the right to express jury unanimity on the means by which the defendant is found to have committed the crime." *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994) (emphasis omitted). But "[i]f the instructions given and the jury's verdict plainly show the jury must have been unanimous as to the alternative means [that] was supported by sufficient evidence, this court may conclude the erroneous instruction did not affect the outcome, and the error was harmless." *State v. Martin*, 69 Wn. App. 686, 689, 849 P.2d 1289 (1993) (citing *State v. Bonds*, 98 Wn.2d 1, 18, 653 P.2d 1024 (1982), *cert. denied*, 464 U.S. 831 (1983)). Here, the alleged error was harmless because (1) the parties argued only two alternative means in closing; (2) instruction 6 listed only two alternative means; (3) the to convict instruction required that in order to find Cross guilty, the

jury to be unanimous that Cross had committed the assault by a single means; and (4) accordingly, jury confusion was highly unlikely.

Cross relies on *Martin*. But this case is easily distinguished from *Martin*. The definitional instruction at issue in *Martin* went beyond describing the alternative means of committing the offense; it stated,

> "A person commits the crime of Driving While Under the Influence of Liquor when he or she drives a motor vehicle while he or she: (1) Has 0.10 grams or more of alcohol per two hundred ten liters of breath as shown by accurate analysis of his or her breath, or 0.10 percent more by weight of alcohol in his blood or her blood as shown by analysis of his or her blood; or (2) is under the influence of or affected by intoxicating liquor. The above are alternate means of committing the single crime charged. *Your determination of the defendant's guilt or innocence may be based upon finding number (1) or finding number (2). These are alternative findings, and each of you may individually arrive at your own determination of the defendant's guilt or innocence based on either alternate method. Jury unanimity as to mode of commission is not required.*"

*Martin*, 69 Wn. App. at 688 n.1 (citation omitted). The to convict instruction, however, referred to only one of the two means. *Martin*, 69 Wn. App. at 689. Division Three of this court held that the last three sentences of the definitional instruction "could have confused the jury" and held that the error was not harmless. *Martin*, 69 Wn. App. at 689.

Here, in contrast, jury instruction 6 did not contain the same language the *Martin* court held could have confused the jury: Instruction 6 did not tell the jury that it could find Cross guilty under any of these means or that it did not have to be unanimous as to the "mode of commission." The to convict instruction was clear and offered the jury only a single option; and other jury instructions advised the jury that its verdict had to be unanimous.[4] Although the

---

[4] Instruction 9 provided in part, "Because this is a criminal case, each of you must agree for you to return a verdict." CP at 53 (Jury Instruction 9).

parties also mentioned the two means during closing arguments, the trial court clearly instructed the jury that the jury instructions contained the relevant law and that it was to disregard any argument that was inconsistent with the court's jury instructions. Given the clear to convict instruction and the absence of the additional language that was at issue in *Martin*, we hold that the instructions and the verdict here "plainly show the jury must have been unanimous as to the alternative means [that] was supported by sufficient evidence" and that any potential errors in the to convict instruction and closing arguments were harmless. *Martin*, 69 Wn. App. at 689.

Furthermore, we agree with the State that this case is more similar to *State v. O'Donnell*, 142 Wn. App. 314, 174 P.3d 1205 (2007). O'Donnell argued that the trial court's to convict instructions for the first degree robbery charge and its lesser included offense of second degree robbery omitted an essential element of the charged crime because they required the jury to find only that he took personal property from the person of another and did not include the alternative means of taking the property "in a victim's presence." *O'Donnell*, 142 Wn. App. at 324. Division Three of our court held that omission of this alternate means did not amount to omission of an essential element of the crime. The same situation exists here: The to convict instruction merely omitted one of the means, not an element of the charge.

## B. No Unanimity-As-To-Means Instruction Required

Cross further argues that she was prejudiced by the trial court's failure to give the jury an additional instruction that it had to be unanimous as to the means of committing third degree assault. Because the to convict instruction contained only one means, instructing the jury that it had to be unanimous as to the means would only have created confusion, as was the case in

*Martin.* Thus, it was not error for the trial court not to instruct the jury sua sponte that it had to be unanimous as to the means of committing the offense.[5]

## II. EFFECTIVE ASSISTANCE OF COUNSEL

Cross next argues that her trial counsel provided ineffective assistance by (1) presenting a defense and a closing argument that focused solely on the alternative means that was not the focus of the State's case or presented in the to convict instruction, and (2) failing to present argument related to the means that was the focus of the State's argument and the to convict instruction.[6] Again, we disagree.

To prevail on her ineffective assistance of counsel claim, Cross must show both deficient performance and resulting prejudice; failure to show either prong defeats such claim. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). Here, because Cross fails to show prejudice; we do not address the deficient performance prong of the test.

Cross argues that her trial counsel's performance was deficient because he focused the defense and his closing argument on whether Cross had committed assault by assaulting Adams with intent to prevent or to resist the lawful apprehension or detention of her husband, despite the State's focus being on the assault of an officer while performing his official duties alternative

[5] Furthermore, even if the trial court had erred in not providing an additional unanimity-as-to-means instruction, Cross's argument would fail. Failure to provide such an instruction does not require reversal if the State presented sufficient evidence to support each alternative means. *State v. Sweany*, 174 Wn.2d 909, 914, 281 P.3d 305 (2012). Here, the State presented sufficient evidence to support both means described by jury instruction 6.

[6] To the extent Cross's argument could be construed as asserting that there is other evidence that her trial counsel failed to present, we do not address this argument because it relates to matters outside the record. *State v. Grier*, 171 Wn.2d 17, 29, 246 P.3d 1260 (2011) ("When an ineffective assistance claim is raised on appeal, the reviewing court may consider only facts within the record."), *adhered to in part on remand*, 168 Wn. App. 635, 278 P.3d 225 (2012).

means. Assuming, without deciding, that this approach was improper and, thus, deficient performance, Cross does not establish prejudice. Given the evidence, there was little defense counsel could argue about the assault of an officer while performing his official duties: The evidence was uncontroverted that Adams was performing his official duties and that Cross assaulted him by jumping on his back, an intentional act. By focusing on Cross's intent at the time of the assault (i.e., that Cross was not intending to assault Adams, but was intending to protect her husband), defense counsel was making the best argument available under the evidence; Cross does not show that this approach prejudiced her. Accordingly, Cross's ineffective assistance argument fails.

### III. PROSECUTORIAL MISCONDUCT

Finally, Cross argues that the State engaged in prosecutorial misconduct during its closing argument and improperly appealed to the jury's passion and prejudice by (1) suggesting that the jury should hold Cross accountable for her actions in order to protect the community, and (2) inviting the jurors to put themselves in Cross's and/or Adams' positions. These arguments also fail.

### A. Standard of Review

A defendant claiming prosecutorial misconduct bears the burden of proving that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial. *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008); *State v. Weber*, 159 Wn.2d 252, 270, 149 P.3d 646 (2006), *cert. denied*, 551 U.S. 1137 (2007). And where, as here, the defendant did not object to the prosecutor's allegedly improper comment at trial, she waives a prosecutorial misconduct claim raised for the first time on appeal unless she

10

can establish that the comment "was so flagrant [and] ill-intentioned that an instruction could not have cured the prejudice." *State v. Corbett*, 158 Wn. App. 576, 594, 242 P.3d 52 (2010) (citing *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129 (1995)). Cross's prosecutorial misconduct claim fails.

A prosecutor has wide latitude in closing arguments to draw reasonable inferences from the facts in evidence and to express such inferences to the jury. *State v. Gregory*, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006); *State v. Dhaliwal*, 150 Wn.2d 559, 577, 79 P.3d 432 (2003). We review any allegedly improper closing argument statements "within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." *Dhaliwal*, 150 Wn.2d at 578. A prosecutor's improper comments are prejudicial "only where 'there is a substantial likelihood the misconduct affected the jury's verdict.'" *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006) (emphasis omitted) (quoting *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998)). Cross does not demonstrate such prejudice here.

### B. Accountability and Community Protection Argument

Cross first argues that the State committed misconduct when it argued that the jury should hold her accountable for her actions in order to protect the community. Specifically, she challenges the italicized portions of the following closing argument:

> Ms. Cross may otherwise be a very nice person. She may have been surprised being awakened that early in the morning. She never anticipated maybe that her husband was going to be arrested, but that does not entitle her to grab at, choke, and try and pull away a deputy sheriff performing his job. *The community has said we have a law about that. It's called assault in the third degree.* The state has given you the evidence to prove that the law has been violated, and *we ask you to hold her accountable as we would any other citizen who breaks these rules.*

11

RP (Oct. 30, 2012) at 79-80 (emphasis added).

Cross misconstrues the State's argument as telling the jurors that they must hold her accountable in order to protect the community or that they had a duty to convict and that an acquittal would violate their oath as jurors. Taken in context, the State's argument suggested merely that Cross's unlawful behavior was not excusable, even if it did not reflect her general nature and was attributable to her reaction to an unusually stressful event. But even if the State's argument suggested to the jury that it had a duty to protect the community by holding Cross accountable for her behavior, these brief comments could have been addressed by a timely objection and a curative instruction.[7] Thus, this argument fails.

## C. Subjective Belief Argument

Cross next argues that the State committed prosecutorial misconduct by encouraging the jurors to put themselves in Cross's and Adams' "shoes." Br. of Appellant at 22. She contends that the State (1) attempted to ask the jury to "'substitute its subjective belief about how any juror would have responded' rather than considering the evidence objectively," and (2) "'encourage[d] the jury to make its decision personal.'" Br. of Appellant at 22 (quoting *State v.*

---

[7] In support of this argument, Cross also cites *State v. Ramos*, 164 Wn. App. 327, 263 P.3d 1268 (2011); *State v. Bautista-Caldera*, 56 Wn. App. 186, 195, 783 P.2d 116 (1989), *review denied*, 114 Wn.2d 1011 (1990); and two New Jersey cases, *State v. Neal*, 361 N.J. Super. 522, 826 A.2d 723 (2003), and *State v. Hawk*, 327 N.J. Super. 276, 283, 743 A.2d 325 (2000). All of these cases involved closing arguments that were far more blatant appeals to "'send a message to the community' or 'call to arms' . . . intend[ed] to promote a sense of partisanship with the jury that is incompatible with the jury's function" than were present here. *Neal*, 361 N.J. Super. at 537. Cross also cites *State v. Coleman*, 74 Wn. App. 835, 838, 876 P.2d 458 (1994), *review denied*, 125 Wn.2d 1017 (1995), in which the State argued that the jury would have to ignore the evidence in order to acquit the defendant and that this would violate the jurors' oaths. *Coleman* is inapposite because the objectionable argument there did not in any way resemble the argument Cross now challenges.

No. 44192-6-II

*Walker*, 164 Wn. App. 724, 736, 265 P.3d 191 (2011), *remanded for reconsideration*, 164 Wn.2d 724 (2012)). More specifically, Cross challenges the following italicized portions of the State's argument:

> Notice one thing that the officers never did, either one of them in this procedure. Neither one of them pulled a gun. I suppose they could have come up to the door, pulled a gun, pointed and said, "We know Minor Cross is in there. Get him out." When Minor Cross slammed the door in Deputy Adams' face, injured his hand, the deputy didn't pull out a gun and say, "You are hurting me, you are assaulting me. I am going to respond even greater." He didn't do that. When they hauled the defendant off Deputy Adams' back, Deputy Argyle didn't pull out a gun and point it at her. It was violent, yes, but it was violence within the bounds that they are authorized to do in trying to effect an arrest. *If you think you can do a better job, then join up,* but as the court has instructed you, *when police officers are performing their duty, you can stand there and complain, you can call them names, you can write letters to their bosses or letters to the editor, you can go down to your legislature and try and get laws changed, but you do not get to physically assault and attack a police officer, because down that path leads disaster.*

RP (Oct. 30, 2012) at 76-77 (emphasis added). This challenge also fails.

We acknowledge that in the above italicized portion of its closing argument, the State may have been suggesting that the jurors should consider their personal beliefs in evaluating Adams' actions; nevertheless, we disagree with Cross's characterization of the argument as a whole. This italicized portion of the State's argument appears to have been an attempt to rebut Cross's apparent defense—that her actions were reasonable in light of the circumstances—by emphasizing that although the situation was unpleasant, Adams had a right to arrest Cross's husband and that his actions did not justify Cross's illegal behavior. Taken as a whole, this argument did not amount to asking the jurors to use their personal standards to determine whether Cross's behavior was excusable.

13

No. 44192-6-II

Even assuming, without deciding, that this argument was improper, in light of the strong evidence in this case, any potential prejudice could have been cured by a timely proper instruction. But Cross neither objected nor requested a curative instruction; and she fails to meet the resultant higher standard of showing that the argument was so flagrant and ill intentioned that a timely instruction would not have cured the error. Accordingly, this argument also fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, J.

We concur:

Bjorgen, A.C.J.

Lee, J.

14