249 N.J. Super. 428 (1991)
592 A.2d 617
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BYRON LOCKETT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 5, 1991.
Decided July 9, 1991.
*430 Before Judges DEIGHAN, BAIME and A.M. STEIN.
Wilfredo Caraballo, Public Defender, attorney for appellant (Robert L. Sloan, Assistant Deputy Public Defender, of counsel and on the brief).
Byron Lockett, appellant, submitted a supplemental brief pro se.
Herbert H. Tate, Jr., Essex County Prosecutor, attorney for respondent (Elizabeth A. Duelly, Assistant Prosecutor, of counsel).
*431 PER CURIAM.
Defendant was attempting to elude a fleeing police car when his speeding automobile struck a pedestrian who died shortly thereafter in the hospital. Defendant and his passenger fled the scene on foot. The police found cocaine and a switchblade knife in the abandoned car. Defendant was arrested several hours later.
The jury found defendant guilty of first degree aggravated manslaughter, N.J.S.A. 2C:11-4a, and unlawful possession of cocaine, N.J.S.A. 2C:35-10a(1). The trial judge sentenced defendant to a twenty-year prison term for the aggravated manslaughter and a concurrent four-year term for cocaine possession. He also imposed a $50 lab fee, $1,000 DEDR penalty, $60 VCCB penalty and suspended defendant's driving privileges for six months.
We reverse the count for aggravated manslaughter because the trial judge improperly admitted inflammatory photographs of the victim's body into evidence and because of the prosecutor's improper questions on cross-examination of defendant and his comments on summation. We affirm the cocaine conviction because there was overwhelming evidence of defendant's guilt of that offense untainted by these trial errors, and because defendant admitted his guilt of this offense when he testified.
There was abundant evidence that defendant recklessly operated his vehicle. He struck the pedestrian crossing the street from right to left, when he drove to the left of an automobile waiting at a red light. His speed on this twenty-five mile per hour street was variously estimated at forty miles per hour (by defendant at time of impact), between fifty and fifty-five miles per hour (by defendant before impact and by the officers in the pursuing police car) and ninety to one hundred miles per hour (by the occupant of the vehicle which defendant passed on the left immediately before he struck the pedestrian). Upon collision, the victim's body flew into the air with considerable force. *432 When defendant testified, he admitted he was drinking earlier and was driving recklessly at the time of impact.
The essential question for the jury to determine was whether defendant's driving recklessly caused the death of the pedestrian (third degree death by auto, N.J.S.A. 2C:11-5) or whether his driving recklessly caused the pedestrian's death under circumstances manifesting extreme indifference to human life (first degree manslaughter, N.J.S.A. 2C:11-4a). The jury's opportunity to objectively and dispassionately evaluate whether defendant was guilty of the lesser or the greater offense was tainted by the admission of prejudicial photographs and the highly improper conduct of the prosecutor.
Five of the eight offered pre-autopsy photographs were admitted into evidence. They are in color. They are gruesome. Three are particularly grisly. One depicts the shaved crown on the victim's skull, laying bare an ugly laceration on the top of his head. Another depicts the decedent's bloody right leg. The third photo is a full-front view of decedent's swollen, black and blue face, showing his mouth pried open with medical instruments. The prosecutor argued that the photographs should be admitted:
To demonstrate the nature of the injuries sustained by the victim and also corroborate, in part, the high rate of speed when the impact occurred and the legs of the victim were virtually severed due to the impact from the automobile. And the medical examiner, in order to adequately explain to the jury the nature of injuries, must be able to express these quite candidly. [emphasis added].
In other words, the photographs were offered to inflame the jury. We see no other purpose for their admission. They were of little, if any, relevance to show one of the purposes proposed by the prosecutor, the speed of defendant's vehicle at the time of impact. In the absence of any foundation testimony, it is difficult to perceive how pictures of a mutilated corpse can be proof that defendant's vehicle was traveling at twenty, thirty, fifty or one hundred miles per hour at the time of impact. Moreover, even if these pictures were remotely relevant, their *433 inordinately high capacity for prejudice far exceeded any probative value. Evid.R. 4. The jury saw pictures of defendant's damaged vehicle and heard testimony about his excessive speed and the force with which the decedent was propelled into the air and forward upon impact. Admission of these photographs into evidence was an abuse of the trial judge's discretion because their tenuous relevance was overwhelmed by their inherently prejudicial nature. State v. Thompson, 59 N.J. 396, 420-21, 283 A.2d 513 (1971): "[E]ven relevant evidence of an inflammatory nature may not be admitted under Evid.R. 4, regardless of the availability of limiting instruction, if probative, non-inflammatory evidence on the same point is available." State v. Davis, 116 N.J. 341, 366, 561 A.2d 1082 (1989). We note that the trial judge did not give a limiting instruction as to the purpose of these photographs.
The record is redolent with instances of prosecutorial misbehavior, both on cross-examination and in summation.
On cross-examination the prosecutor:
1. Knowing it to be untrue, asked defendant if he had previously been convicted of possession of cocaine. The prosecutor knew that defendant's prior conviction was for unlawful possession of prescription pills (Doriden-Empiren compound);
2. Without any factual basis for the question, asked defendant if he had consumed any drugs earlier that day;
3. Knowing it to be untrue, asked defendant if the car he was driving was stolen by him from his mother.
In summation, the prosecutor:
1. Accused defense counsel of attempting to deceive the jury. He argued:
Why don't we cut through all the smut, we have all this discussion about legality, probability, possibility, we'll start out with the defendant guilt[y] of death by auto.

*434 ....
It is typical when the best defense counsel, when the evidence is so overwhelming that it really makes your gut wrench, what do you do, you don't say look at the evidence, you say look over in the corner of the room, by God, look at some smoke in the corner of the room.
MR. CARLUCCI: I'll object to this.
MR. MANN: I haven't finished my comments.
THE COURT: I'll allow it so far.
MR. MANN: You say look at the smoke over here, because I don't want you to you look in this direction, I don't want you to look at the defendant's conduct, I don't want you to look at the circumstances of the case, I don't want you to look at the facts because, if you look at the facts, I'm crushed. My defendant is guilty.
A prosecutor is not permitted to cast unjustified aspersions on defense counsel's motives. State v. Sherman, 230 N.J. Super. 10, 16, 552 A.2d 621 (App.Div. 1988).
2. Falsely suggested that defendant smiled after striking the victim with his automobile. In discussing defendant's flight from the accident scene, the prosecutor said:
This guy didn't care about anything and how do we know that additionally. When he got out, he took off. Did he stay and say, well, gee, let me see if I can help this man out, gee, I was in an accident, this is terrible, call an ambulance, the police, I'll stay here. He took off.

Why, why did he smile then, we don't know. We weren't there but we know he took off. [emphasis added].
There is no evidence of this baseless accusation. The jury would be justified in concluding that a driver who smiled after striking down a helpless pedestrian certainly manifested extreme indifference to human life. The statement was highly prejudicial. "It is axiomatic that a prosecutor is duty-bound to confine his summation to facts revealed during the trial and the reasonable inferences which may properly be drawn therefrom." State v. Marks, 201 N.J. Super. 514, 534, 493 A.2d 596 (App.Div. 1985), certif. denied, 102 N.J. 393, 508 A.2d 253 (1986).
3. Improperly urged the jury to convict out of sympathy for the deceased victim. The prosecutor stated:
Now one thing that we didn't talk about during this case too much and I don't think you have to, you can't afford to lose sight of it, because despite the fact *435 we're in courtroom and lot of technical matters that come up, the Judge will charge you on the law, it's extremely technical, you will have to pay real close attention to that. Despite the fact we're all lawyers and perhaps you don't like lawyers, or being jurors, there is one thing we don't or can't lose sight of, Keith Johnson was a 35 year old man. I never met him, we never will obviously. And underlying this, despite whatever your decision is, you have to maintain humanity.
You have to do the right thing and the right thing, I submit to you, is to find this man guilty of aggravated manslaughter. But while you are doing that, remember that Keith Johnson lost his life. A man born of a woman, a man with family, with friends, a man doing nothing other than crossing the street by his house at 69 Fabyian. And because of the conduct of this man, his life was snuffed out like that. In a most horrible way. Absolutely horrible.
And what you must not forget, while you're considering the guilt or innocence of this defendant, is that Keith Johnson has lost his life and that when he lost his life, because of the conduct of this man, we were all diminished, it took something away from all of us. When a church bell tolled for Keith Johnson, we all heard it.
Because when someone dies, it effects all of us, directly or indirectly, we're all part of humanity. Whatever you do, because you have to live with yourself, whatever your verdict, is, you have to live with yourself, you can't forget a man, a real man died, they're not just terrible pictures of a mutilated man, that's not what it is about, it is not a case of a piece of meat having lost it's life, that's what it looks like, doesn't it. This is a viable human being who lost his life. Someone has to take the responsibility for it, you can't lose sight of the fact that this man lived, and he died. You cannot lose sight of the fact that he died because of the conduct of this man, because he was reckless and because he didn't care who lived or died. Thank you, Judge.
When the victim's character has no bearing on the substantive issue of guilt, the prosecutor may not comment on the evidence in a manner that highlights the victim's virtues in order to inflame the jury. State v. Williams, 113 N.J. 393, 451-52, 550 A.2d 1172 (1988); State v. Muniz, 228 N.J. Super. 492, 500, 550 A.2d 487 (App.Div. 1988), rev'd on other grounds, 118 N.J. 319, 571 A.2d 948 (1990).
We assume that a prosecutor will "sum up the State's case graphically and forcefully." State v. Johnson, 31 N.J. 489, 510-11, 158 A.2d 11 (1960). We do not expect the prosecutor to perform this burdensome obligation with the daintiness of a participant in a minuet. See State v. Marks, supra, 201 N.J. Super. at 534-35, 493 A.2d 596. The prosecutor is nevertheless obligated "to stay within bounds, that no [person] be *436 convicted unjustly." State v. Bogen, 13 N.J. 137, 141, 98 A.2d 295 (1953).
The accumulation of error deprived defendant of a fair trial on the charge of aggravated assault. State v. Orecchio, 16 N.J. 125, 129, 106 A.2d 541 (1954).
We note that the judge's instruction to the jury made reference to the "homicide" of the victim committed by defendant. It is true that "homicide" is defined as the killing of one person by another. Webster's Third New International Dictionary 1083 (1981). However, we believe that the word has different connotations to a large segment of the public, and that it suggests that an individual has committed a criminal act in killing another person. The use of the word "homicide" as a definition for the killing of another should be avoided in a criminal charge.
The judgment of conviction for unlawful possession of cocaine is affirmed. The conviction for aggravated manslaughter is reversed and the matter is remanded to the Law Division for a new trial on that charge.