**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0100-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ALEXANDRA MANSONET,

     Defendant-Appellant.

_____

Argued March 3, 2022 – Decided March 15, 2022

Before Judges Haas and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 17-11-1556.

Raymond M. Brown argued the cause for appellant (Pashman Stein Walder Hayden, PC, attorneys; Raymond M. Brown, of counsel; Rachel E. Simon, of counsel and on the brief).

Lisa Sarnoff Gochman argued the cause for respondent (Lori Linskey, Acting Monmouth County Prosecutor, attorney; Lisa Sarnoff Gochman, of counsel and on the brief).

PER CURIAM

A Monmouth County grand jury charged defendant Alexandra Mansonet in a one-count indictment with second-degree reckless vehicular homicide, N.J.S.A. 2C:11-5(a). The trial court later denied defendant's motion to dismiss the indictment and her motion to suppress statements she made to the police and the evidence found in her cell phone following a consent search.

After a multi-day trial, the jury convicted defendant of second-degree reckless vehicular homicide. The court then found defendant guilty of two motor vehicle violations, reckless driving and use of a phone in a moving vehicle.

The court sentenced defendant to five years in prison on the reckless vehicular homicide conviction, subject to an eighty-five percent period of parole ineligibility under the No Early Release Act, N.J.S.A. 2C:43-7.2, and three years of parole supervision upon her release. The court sentenced defendant to a concurrent sixty-day jail term for reckless driving, and imposed fines and costs for the use of a phone in a moving vehicle violation.

On appeal, defendant raises the following contentions:

POINT I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ISSUING A JURY CHARGE ON

2

"RECKLESSNESS" THAT WAS CONFUSING, MISLEADING, PREJUDICIAL, AND UNCONSTITUTIONAL.

POINT II

THE COURT COMMITTED REVERSIBLE ERROR BY MISAPPLYING THE LAW WHEN DECIDING DEFENDANT'S MOTION TO SUPPRESS HER CELLPHONE.

POINT III

THE STATE'S CUMULATIVE CONDUCT DEPRIVED DEFENDANT OF A FAIR TRIAL.

After reviewing the record in light of the contentions advanced on appeal, we affirm.

I.

At 8:15 a.m. on September 28, 2016, Robert Matich was driving his son to work on Laurel Avenue in Keansburg. As he approached an intersection, Yuwen Wang stepped into the crosswalk. Matich came to a complete stop to allow Wang to safely cross the street in front of him.

That same day, defendant left her home at 8:15 a.m. to drive to work. She drove down Laurel Street and approached the intersection where Matich was already stopped. Defendant rear-ended Matich's car just as Wang was in front of it. The force of the impact propelled Matich's car into Wang. The car threw

3

Wang into the air and her head smashed against the sidewalk when she landed. Wang suffered severe head injuries and the medical team airlifted her to a trauma center.

During their investigation, the police found surveillance videos of the crash showing that defendant's brake lights did not activate at any point before she struck Matich's car. Defendant's tires made no skid marks on the street.

In addition to Matich, there were several eyewitnesses. None of the witnesses saw defendant slow down. One eyewitness testified she saw defendant looking down into her lap as she drove toward Matich's vehicle.

Officer Nicholas Greene transported defendant to the hospital where she consented to a blood draw. No drugs or alcohol were found. Greene asked defendant if she would be willing to consent to a search of her cell phone and car. Defendant replied, "I have nothing to hide[,]" and gave her verbal consent.

Later that day, Detective Ryan McAndrews interviewed defendant at headquarters. She read the Miranda[1] warnings out loud and agreed to waive her rights. Defendant also signed a written consent form permitting the police to search her phone. The police made a video recording of the interview, but the State did not play it for the jury at trial.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0100-20

The day after the fatal crash, the police searched defendant's phone and found she read a text she received from Denise Mansonet,[2] her former sister-in-law, at 8:18:22 a.m. This was a little over one minute before defendant hit Matich's car.[3] The two women planned to meet in New York City for dinner that day. Denise's text stated, "Cuban, American or Mexican. Pick one." McAndrews examined defendant's phone and found that she had typed the letters "Me," which are the first two letters of the word "Mexican," as a response to the text. However, McAndrews testified the text was not sent and there was no way to determine when defendant typed it.

Wang died on October 3, 2016. The cause of death was the blunt force trauma she suffered when she was struck by the car.

On October 11, 2016, McAndrews interviewed defendant again after giving her the <u>Miranda</u> warnings. The State did not introduce this video recording at trial.

At trial, defendant presented five character witnesses who testified about her reputation in the community as a truthful person. Defendant testified on her

---

[2] Because defendant and her former sister-in-law share the same surname, we refer to Denise Mansonet by her first name to avoid confusion. We intend no disrespect.

[3] The fatal crash occurred at 8:19:33 a.m.

A-0100-20

own behalf. She stated she plugged her phone into her car's speakers when she left home. She heard Denise's text message come in and read it. Defendant claimed she could not remember typing the letters "Me" in response to Denise's text.

Shortly before the crash, defendant testified she activated her rear defroster by pushing a button on the dashboard. She denied seeing Matich's car until it was too late to stop. She did not recall seeing any of the eyewitnesses as she drove. She agreed the crash would not have occurred if she had been looking forward the entire time she was driving as she approached the intersection.

II.

In Point I, defendant argues for the first time on appeal that the trial court failed to properly instruct the jury on reckless vehicular manslaughter. We disagree.

It is well settled that "[a]ppropriate and proper charges are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (alteration in original) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)). Jury instructions must give "a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find." Id. at 159 (quoting State v. Green, 86 N.J. 281, 287-88 (1981)).

A-0100-20

"[I]n reviewing any claim of error relating to a jury charge, the 'charge must be read as a whole in determining whether there was any error . . . .'" State v. Gonzalez, 444 N.J. Super. 62, 70-71 (App. Div. 2016) (quoting State v. Torres, 183 N.J. 554, 564 (2005)). Where defense counsel did not object to the jury charge at trial, the plain error standard applies. State v. Singleton, 211 N.J. 157, 182-83 (2012). We reverse only if the error was "clearly capable of producing an unjust result," id. at 182 (quoting R. 2:10-2), and consider the totality of the circumstances when making this determination. State v. Marshall, 123 N.J. 1, 145 (1991). Against these standards, we conclude there was no error, let alone plain error.

The trial court's jury instruction on reckless vehicular manslaughter spanned eight transcript pages. The court followed the model jury charge for this offense. We have consistently held that a jury charge that tracks the language of the governing statute, and which is consistent with the applicable model charge, is not plainly erroneous. See State v. Rodriguez, 365 N.J. Super. 38, 53-54 (App. Div. 2003). Defendant did not object to the trial court's proposed instructions during the charge conference or when the court delivered the charge to the jury.

A-0100-20

Defendant contends the trial court failed to clearly articulate the elements of reckless vehicular homicide the jury had to consider in determining whether she was guilty of that offense. However, this contention fails because the court read N.J.S.A. 2C:11-5(a) to the jury and explained that:

> In order for [the jurors] to find the defendant guilty of this crime, the State must prove the following elements beyond a reasonable doubt.
>
> First; that the defendant was driving a vehicle.
>
> Second; that the defendant caused the death of Yuwen Wang.
>
> And, third; that the defendant caused such death by driving the vehicle recklessly while using a handheld wireless telephone in violation of the law.

Defendant next alleges the court did not "apply the facts and issues to the black letter law." We reject this contention because the court outlined both parties' competing factual claims during its instructions concerning N.J.S.A. 2C:11-5(a). The court stated:

> [T]he State has presented evidence suggesting that defendant may have been operating a handheld wireless telephone while driving a motor vehicle in violation of [N.J.S.A.] 39:4-97.3, which has been defined for you. The defendant denied that she was operating a handheld wireless telephone while she was driving, and testified that she was turning on the vehicle's rear window defroster when the accident occurred.

The court then carefully defined the term "recklessness" by stating that

> a person acts recklessly when she consciously disregards a substantial and unjustifiable risk that death will result from her conduct. The risk must be of such a nature and degree that considering the nature and purpose of the defendant's conduct and the circumstances known to her, disregard for the risk involves a gross deviation from the standard of conduct that a reasonable person would observe in the defendant's situation. In other words, in order for you to find that the defendant drove a vehicle recklessly, the State must prove beyond a reasonable doubt that the defendant was aware that she was operating a vehicle in such a manner or under such circumstances as to create a substantial and unjustifiable risk of death to another.

Because the court correctly instructed the jury on the facts at issue and the applicable law, defendant's contention lacks merit.

Defendant also argues the court "failed to clearly articulate the circumstances under which defendant should be acquitted." Again, this contention has no basis in the record. The court specifically advised the jury:

> If you find that the State has failed to prove beyond a reasonable doubt that the defendant operated a motor vehicle recklessly, as I have defined that term for you, you must find defendant not guilty. If, on the other hand, you find that the State has proven beyond a reasonable doubt that defendant operated a motor vehicle recklessly, you must find defendant guilty.

9

Defendant next asserts the court "conflated" the definition of recklessness under N.J.S.A. 2C:11-5(a) with the motor vehicle violation of reckless driving. However, the court provided separate definitions of recklessness for reckless vehicular manslaughter and for reckless driving, while making clear that the jury was not responsible for determining defendant's guilt or innocence of a motor vehicular violation. Therefore, we reject this contention.

Defendant also claims the court did not provide any guidance to the jury about the "permissive statutory inference that may be used to satisfy recklessness" under N.J.S.A. 2C:11-5(a). However, the court told the jury:

> Proof that defendant may have been operating a handheld wireless telephone while driving a motor vehicle may give rise to an inference that the defendant was driving recklessly. However, you are never required or compelled to draw this inference. It is your exclusive province to determine whether the facts and circumstances shown by the evidence support any inference, and you are always free to accept or reject the inference as you deem appropriate.

Therefore, there is no basis in the record for defendant's argument on this point.[4]

In sum, the trial court's instructions provided a "comprehensible explanation of the questions" presented to the jury and the law applicable to the

---

[4] We have considered defendant's remaining contentions concerning the jury charge, and conclude they are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(2).

facts.  See Baum, 224 N.J. at 159.  Contrary to defendant's assertions, the charge was not "confusing, misleading, prejudicial, [or] unconstitutional."

III.

Defendant next argues that the trial court erred by denying her motion to suppress the statements she made to McAndrews following the fatal crash and the evidence he obtained from her cell phone.  She asserts that her Miranda rights waiver was involuntary and, as a result, so was her consent to search the phone.  This argument lacks merit.

The court conducted a pre-trial, evidentiary hearing concerning defendant's suppression motion.  McAndrews and Greene were the only witnesses.  At the conclusion of the hearing, the court rendered a detailed oral decision setting forth its findings of fact and conclusions of law.  Because the parties are fully familiar with the court's ruling, we summarize the most salient facts here.

At police headquarters, McAndrews began the interview by telling defendant, "Now, just as formality part [sic] in the discussion of anything[,] I'm just [going to] read you your rights real fast; just so you understand them and everything.  But[,] [sic] I'd like to do is have you read it out loud if you could."  McAndrews also asked defendant to initial what she read to indicate that she

11

understood "everything." Defendant asked if she was "being arrested" and McAndrews replied, "No. . . . You're not being charged with anything. . . . This is just a statement of what happened out there at the scene."

McAndrews asked defendant to read the <u>Miranda</u> warnings out loud. After defendant read the first sentence, "You have the right to remain silent and refuse to answer any questions[,]" she stated, "[w]hich makes me nervous cause I thought I had to get an attorney." She then read the rest of the warnings, including the portions covering her right to consult with an attorney and to have an attorney appointed for her. Defendant next read the provision in the warnings stating she understood and wished to waive her <u>Miranda</u> rights. Defendant then read and signed a separate consent form for the search of her phone.

McAndrews began to interview defendant. At some point, he left the room. Defendant remarked to the other officer present that "[t]his is like a scene from The Wire[,]" an HBO miniseries. She stated, "It's pretty intimidating." Defendant and the officer briefly discussed the plot of another television show. The officer left the room to get a glass of water and offered to get one for defendant. She declined. McAndrews returned to the room and the interview continued. When McAndrews finished speaking with defendant, she left police headquarters with her husband.

12

Defendant argued her comments indicated she was nervous and intimidated during the interview and, therefore, her statements were involuntary. After observing the video recording of the interview, the trial court rejected defendant's contentions.

Although defendant stated she was nervous and compared the interview to a television show, the court found nothing in the totality of the circumstances to support defendant's claim that she was too intimidated to voluntarily waive her <u>Miranda</u> rights. The court noted that defendant was forty-seven years old, employed, appeared intelligent, and was not impaired. The interview was brief and McAndrews did not attempt to coerce defendant in any way.

The court also found that although defendant remarked she "thought [she] had to get an attorney" as she began to read the <u>Miranda</u> warnings, she then read that she had the right to counsel and to have an attorney appointed if she could not afford one. After obtaining that information, defendant did not request an attorney and did not ask for the interview to end. Therefore, the court denied defendant's motion to suppress her statement and the evidence obtained from her phone.

Defendant now repeats her previous contentions. However, we discern no basis for disturbing the trial court's decision.

A-0100-20

In reviewing the denial of a motion to suppress for an alleged violation of Miranda, we use a "searching and critical" standard of review to protect a defendant's constitutional rights. State v. Maltese, 222 N.J. 525, 543 (2015) (quoting State v. Hreha, 217 N.J. 368, 381-82 (2014)). We defer to a trial court's fact findings on a Miranda motion if supported by sufficient credible evidence. Ibid. Our deference is required even where the court's "factfindings [are] based solely on video or documentary evidence," such as recordings of custodial interrogations by the police. State v. S.S., 229 N.J. 360, 379 (2017). We do not, however, defer to a trial judge's legal conclusions, which we review de novo. State v. Rockford, 213 N.J. 424, 440 (2013).

The State bears the burden to prove, beyond a reasonable doubt, that the interrogating officers have complied with Miranda. State v. Yohnnson, 204 N.J. 43, 59 (2010). The trial judge must examine the totality of the circumstances. State v. Adams, 127 N.J. 438, 447-48 (1992).

After considering these precedents, we conclude the trial court properly exercised its discretion by denying defendant's suppression motion. Defendant neither expressly nor impliedly requested an attorney. As the court found, her statement about an attorney "was made almost as an aside to herself while she was in the process of reading her Miranda rights off the Miranda form. It did

A-0100-20

not appear to be made directly to law enforcement . . . ."  Defendant went on to read that she had the right to have an attorney present during questioning, and she then waived this right.  Because defendant did not ask McAndrews any questions about obtaining an attorney and never requested one, there was no need to suppress her statement or the subsequent cell phone search.  Cf. State v. Gonzalez, ___ N.J. ___, ___ (2022) (slip op. at 20-22) (a defendant's question asking what she should "do about an attorney and everything" constituted "an ambiguous invocation of her right to counsel that required the detective to cease all questioning and seek clarification.").

The trial court watched the recording of the interview and found McAndrews did not conduct it in an "intimidating" manner.  While defendant may have been "nervous," she fully responded to all of the detective's questions.  She also returned for a second interview and again waived her Miranda rights.  The State did not play the recorded statements to the jury at the trial.

Under these circumstances, there was no basis for suppressing the statements or for concluding that defendant's later consent to permit the police to search her phone was involuntary.

A-0100-20

IV.

Defendant raises three additional arguments in Point III. First, defendant alleges that Denise testified before the investigating grand jury that defendant told her she was adjusting her car's defroster when she crashed into Matich's vehicle. She claims the State should have advised the indicting grand jury of this "exculpatory evidence" and because it did not, the trial court should have dismissed the indictment. We disagree.

Prosecutors have a duty to inform the grand jury of certain evidence "only if the evidence satisfies two requirements: it must directly negate guilt and must also be clearly exculpatory." State v. Hogan, 144 N.J. 216, 237 (1996). Our Supreme Court has made clear that "an accused's self-serving statement denying involvement in a crime, although such a statement directly negates guilt, ordinarily [is not] sufficiently credible to be 'clearly exculpatory,' and need not be revealed to the grand jury." Id. at 238.

Here, Denise was merely repeating defendant's "self-serving statement" that she was turning on her defroster just before the crash. Because the State was not required to provide this information to the grand jury that indicted defendant, the trial court correctly exercised its discretion in denying defendant's motion to dismiss the indictment. See State v. Saavedra, 222 N.J.

A-0100-20

39, 55 (2015) (stating that we review a trial court's decision on a motion to dismiss an indictment for abuse of discretion).

Defendant next asserts the State committed a Brady[5] violation because it did not reveal Denise's testimony to her until right before the trial. Under Brady, the State must turn over exculpatory material in its possession or under its control to the defense. 373 U.S. at 87. As noted above, Denise's testimony merely parroted defendant's claim about the defroster and was not clearly exculpatory. In any event, the State disclosed this testimony to defendant before the trial began. Therefore, we reject defendant's contention.

Finally, defendant contends the prosecutor improperly told the jury during summation that it should not consider the testimony of defendant's character witnesses. This argument lacks merit.

During his summation, defense counsel told the jury his client was "[a] woman who is involved in the Jewish Renaissance Foundation, a church. Her whole life was more or less providing charity and providing help for people." In response, the prosecutor stated:

> I told you probably four or five seconds into my opening statement that [defendant is] a good person. . . . I didn't even know that she was a good person, I just assumed she was. And then you heard the character

---

[5] Brady v. Maryland, 373 U.S. 83 (1963).

A-0100-20

witnesses come in here and they told you the same thing. She's a good person. . . . But unfortunately[,] that's not really the one issue in this case. The issue is, was she texting?

. . . .

[Defendant] is here because she was texting and driving. People may do it all the time. There but for the grace of God go I. But it doesn't make it right. Okay. It doesn't make it legal. The law is the law, free of sympathy or compassion. Okay. She's not a bad person. You heard that time and time again yesterday. I didn't ask any questions. . . . I wasn't challenging anyone on that conclusion. Nor does it matter.

We are satisfied the prosecutor's comments were not improper. Prosecutorial misconduct is not a basis for reversal unless the conduct "was so egregious that it deprived [the] defendant of a fair trial." State v. DiFrisco, 137 N.J. 434, 474 (1994). Considerable leeway is afforded to prosecutors in presenting their arguments at trial "as long as their comments are reasonably related to the scope of the evidence presented." State v. Frost, 158 N.J. 76, 82 (1999). Thus, "[i]t is not improper for the prosecution to suggest that the defense's presentation was imbalanced and incomplete." State v. Patterson, 435 N.J. Super. 498, 508 (App. Div. 2014) (quoting State v. Timmendequas, 161 N.J. 515, 593 (1999)). However, "'[a] prosecutor is not permitted to cast

unjustified aspersions' on defense counsel or the defense." Frost, 158 N.J. at 86 (quoting State v. Lockett, 249 N.J. Super. 428, 434 (App. Div. 1991)).

To determine if the alleged misconduct was sufficiently egregious to warrant reversal, the appellate court "must consider 'whether defense counsel made a timely and proper objection, whether the remark was withdrawn promptly, and whether the court ordered the remarks stricken from the record and instructed the jury to disregard them.'" Patterson, 435 N.J. Super. at 508-09 (quoting State v. Wakefield, 190 N.J. 397, 438 (2007)). As a general rule, a remark will not be considered prejudicial if no objection was made. State v. R.B., 183 N.J. 308, 333 (2005) (citing Frost, 158 N.J. at 83). "The failure to object suggests that defense counsel did not believe the remarks were prejudicial at the time they were made. The failure to object also deprives the court of an opportunity to take curative action." Ibid. (quoting Frost, 158 N.J. at 84).

Defendant did not object to the prosecutor's remarks. The prosecutor did not cast aspersions on the character witnesses, nor did he question defendant's character at all. The prosecutor merely pointed out that regardless of defendant's reputation, the ultimate issue for the jury was whether defendant was guilty of reckless vehicular manslaughter. Under these circumstances, we detect no misconduct on the prosecutor's part.

A-0100-20

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0100-20