NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5005-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SUPREME LIFE, a/k/a
CHARLES E. HOSKINS, III,

     Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

July 7, 2022

APPELLATE DIVISION

Argued April 4, 2022 – Decided July 7, 2022

Before Judges Messano, Rose and Marczyk.

On appeal from the Superior Court of New Jersey,
Law Division, Burlington County, Indictment No. 18-
04-0537.

Alison Gifford, Assistant Deputy Public Defender,
argued the cause for appellant (Joseph E. Krakora,
Public Defender, attorney; Alison Gifford, of counsel
and on the briefs).

Alexis R. Agre, Assistant Prosecutor, argued the cause
for respondent (Scott A. Coffina, Burlington County
Prosecutor, attorney; Alexis R. Agre, of counsel and
on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

A Burlington County grand jury indicted defendant, Supreme Life a/k/a Charles E. Hoskins, III, and his son, Antoine L. Ketler, for the first-degree murder of Moriah Walker, N.J.S.A. 2C:11-3(a)(1), and 2C:11-3(a)(2); first-degree attempted murder of Raheem Williams, N.J.S.A. 2C:5-1(a)(3) and 2C:11-3(a)(1); and defendant alone for two counts of third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d). The jury acquitted Ketler of all charges but convicted defendant of the lesser-included offense of second-degree passion/provocation manslaughter, the attempted murder of Williams, and the weapons offenses.[1] After appropriate mergers, the judge sentenced defendant to consecutive terms of seven years' imprisonment on the manslaughter conviction and thirteen years' imprisonment on the attempted murder conviction, both subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

Before us, defendant raises the following arguments:

POINT I

IT WAS REVERSIBLE ERROR FOR THE PROSECUTOR TO REPEATEDLY CALL THE TESTIFYING DEFENDANT A LIAR IN SUMMATION. (Not Raised Below).

---

[1] The judge had earlier dismissed the murder charge against Ketler.

2                                                          A-5005-18

POINT II

THE JURY INSTRUCTION ON SELF-DEFENSE IMPROPERLY LIMITED SELF-DEFENSE TO THE CRIME OF MURDER.  (Not Raised Below).

POINT III

THE TRIAL COURT OMITTED A CRUCIAL PORTION OF THE MODEL JURY CHARGE ON POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE WHICH INSTRUCTS THE JURY ON PROTECTIVE PURPOSE.  (Not Raised Below).

POINT IV

DEFENDANT WAS DEPRIVED OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL BECAUSE THE STATE INTRODUCED A PRIOR INCONSISTENT STATEMENT OF ITS OWN WITNESS WITHOUT SATISFYING THE REQUIREMENTS OF N.J.R.E. 803(A)(1).

POINT V

THE CUMULATIVE IMPACT OF THE ERRORS DENIED DEFENDANT A FAIR TRIAL.  (Not Raised Below).

POINT VI[2]

DEFENDANT'S SENTENCE IS EXCESSIVE BECAUSE THE COURT ERRED IN ITS FINDINGS OF AGGRAVATING AND MITIGATING

---

[2]  We eliminated the subpoints of this argument contained in defendant's brief.

FACTORS, AND THE COURT INCORRECTLY CONDUCTED ITS <u>YARBOUGH</u> ANALYSIS.[3]

Having considered these arguments in light of the record and applicable legal standards, we reverse.

I.

On February 4, 2018, Raheem Williams, his girlfriend, Niani Skinner, and his roommate, Moriah Walker, rented a car and drove from their residence in New York City to Lumberton to attend a Super Bowl party at the home of Vera VanKline, Williams' aunt. After the game, the trio intended to drive into Philadelphia to celebrate the Eagles' victory, but they soon realized their cell phones needed to be charged to access their GPS. As they tried to find their way back to VanKline's house, they passed defendant's home, which was just around the corner. Defendant, his wife, and other Eagles fans were outside celebrating. Ketler, a Dallas Cowboys fan, was also outside.

The testimony at trial diverged as to what happened next. Undisputedly, Williams, Walker, Ketler, and defendant got into a physical altercation. The State's witnesses painted defendant and his son as the aggressors, continuing the altercation after Williams and Walker tried to leave, and following them back toward the VanKline house. When eventually Williams and Walker

---

[3] <u>State v. Yarbough</u>, 100 N.J. 627 (1985).

returned to safety inside VanKline's residence, everyone saw Williams and Walker had both been stabbed.

VanKline called 9-1-1, and both men were taken to the hospital for emergency surgery. Williams survived, but despite medical attention, Walker did not. The medical examiner testified Walker died from multiple stab wounds to the chest. The autopsy revealed that in addition to being stabbed twice in the chest, Walker was stabbed once in the back of the leg, and once in the arm. The medical examiner characterized the wound to Walker's arm as a defensive wound.

Defendant testified at trial. He said he was inside his house after the game when he saw Ketler being assaulted by two men. He ran across the street to defend his son and break up the altercation. Defendant claimed he carried a knife on his belt every day for work as a landscaper. When defendant heard his wife say one of the men had a gun, defendant took his knife from his belt.

Defendant testified he was only defending himself from Walker as the two wrestled on the ground. He never intended to stab Walker, but Walker's own body weight caused the knife to penetrate his chest. Defendant said that Williams, who was assaulting Ketler, soon came at him, and defendant held out his knife to ward off Williams. Defendant never intended to stab Williams either.

5

Defendant provided a statement to police on the night of the stabbings, which the prosecutor used during cross-examination.[4] Defendant admitted he lied to police, telling them he had not seen his son since noontime on the day of the Super Bowl, and he never told police that Ketler was at the scene. Defendant also never told police that he heard his wife mention a gun, nor did he admit in his statement to stabbing Williams or Walker.

## II.

Defendant contends that the prosecutor's repeated statements during summation accusing defendant of lying in his testimony and calling him a liar, combined with a passing reference to the prosecutor's personal belief in defendant's guilt, denied defendant a fair trial. It is axiomatic that "[t]he duty of the prosecutor 'is as much . . . to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.'" State v. Williams, 244 N.J. 592, 607 (2021) (alteration in original) (quoting State v. Smith, 212 N.J. 365, 403 (2012)). "While 'prosecutors in criminal cases are expected to make vigorous and forceful closing arguments to juries' and are 'afforded considerable leeway,' 'their

---

[4] The State did not introduce defendant's statement during its case-in-chief, and although the statement was marked for identification at trial during defendant's direct testimony, it was not introduced into evidence and is not in the appellate record.

A-5005-18

comments [should be] reasonably related to the scope of the evidence presented.'" Ibid. (alteration in original) (quoting State v. Frost, 158 N.J. 76, 82 (1999)).

> Furthermore, even when a prosecutor's remarks stray over the line of permissible commentary, our inquiry does not end. Rather, we weigh "the severity of the misconduct and its prejudicial effect on the defendant's right to a fair trial," and we reverse a conviction on the basis of prosecutorial misconduct only if "the conduct was so egregious as to deprive defendant of a fair trial."
>
> [State v. McNeil-Thomas, 238 N.J. 256, 275 (2019) (quoting State v. Wakefield, 190 N.J. 397, 437 (2007)).]

"In deciding whether prosecutorial conduct deprived a defendant of a fair trial, 'an appellate court must take into account the tenor of the trial and the degree of responsiveness of both counsel and the court to improprieties when they occurred.'" Williams, 244 N.J. at 608 (quoting Frost, 158 N.J. at 83). "To warrant the remedy of a new trial, there must have been 'some degree of possibility that [the prosecutor's comments] led to an unjust result.'" McNeil-Thomas, 238 N.J. at 276 (alteration in original) (quoting State v. R.B., 183 N.J. 308, 330 (2005)). Defense counsel never objected during the prosecutor's summation, so we review the alleged impropriety for plain error. R. 2:10-2.

Defendant admitted lying to police in his statement after the stabbings — the prosecutor's opening salvo early in summation was defendant "lied his rear end off" — but the prosecutor did not limit his characterization of defendant as a liar to the falsity of that version of events. Instead, the prosecutor used defendant's admission that he lied to police as a cudgel to explicitly argue defendant's testimony at trial was more lies told by an admitted liar.

In addition to simply calling defendant a "liar" numerous times, the prosecutor wove the accusation into an attack on defendant's claims of self-defense and defense of another, seemingly blurring which party had the burden of proof:

> I also want to include an explanation of self-defense and defense of others and why they don't apply in this case. <u>Because for any of those things to apply, there's one thing that you would have to find.</u>
>
> <u>You have to find that this man is not a liar. Something he got on that stand and admitted to you he was. You'd have to believe him in order to believe the lesser includeds.</u> You would have to believe him in order to find self-defense or that he acted in the defense of others.
>
> You can't believe a word that man says. <u>Based on his testimony yesterday we know he's a liar</u>.
>
> . . . .

A-5005-18

Well, we know that is a lie because he g[ot] on the stand and t[old] you he lied.

. . . .

. . . Then he takes the stand yesterday, his story changes completely.

That's what liars do.  When they get caught in a lie, they have to come up with something to justify it. . . . They lie to get out of trouble.

. . . .

It's a story that's created by a liar.

. . . .

. . . Again, he's a liar, he's not worthy of belief. You have to believe him to find passion/provocation. You have to believe him to find self-defense or defense of others.[5]

[(Emphasis added).]

---

[5]  The prosecutor made only passing reference later to the State's burden of disproving the elements of passion/provocation manslaughter.  See Model Jury Charges (Criminal), "Murder, Passion/Provocation and Aggravated/Reckless Manslaughter (N.J.S.A. 2C:11-3(a)(1) and (2); 2C:11-4(a), (b)(1)and (b)(2))" (rev. June 8, 2015) at 4–6.  During his summation, the prosecutor did not remind jurors that the State bore the burden of proving defendant did not act in self-defense or in defense of another.  See Model Jury Charges (Criminal), "Justification-Self Defense In Self-Protection (N.J.S.A. 2C:3-4)" (rev. June 13, 2021) at 4; Model Jury Charges (Criminal), "Justification — Use of Force in Protection of Others (N.J.S.A. 2C:3-5)" (approved Oct. 17, 1988) at 2.

A-5005-18

At another point, early in the summation, the prosecutor told jurors his personal opinion that defendant "is definitely guilty of the murder of Moriah Walker."

"It is improper for a prosecutor to express his personal opinion on the veracity of any witness." State v. Rivera, 437 N.J. Super. 434, 463 (App. Div. 2014) (citing State v. Marshall, 123 N.J. 1, 154 (1991)). A prosecutor may attempt to persuade the jury that a witness is not credible and in doing so, "may point out discrepancies in a witness's testimony or a witness's interests in presenting a particular version of events." State v. Johnson, 287 N.J. Super. 247, 267 (App. Div. 1996) (citing State v. Purnell, 126 N.J. 518, 538 (1992)).

It is, however, improper for a prosecutor to use derogatory epithets to describe a defendant. State v. Pennington, 119 N.J. 547, 576–77 (1990). "[B]y no stretch of the imagination can it be said that describing defendant as a 'coward,' 'liar,' or 'jackal' is not derogatory. . . . Epithets are especially egregious when . . . the prosecutor pursues a persistent pattern of misconduct throughout the trial." Wakefield, 190 N.J. at 466–67 (quoting Pennington, 119 N.J. at 577); see also State v. Acker, 265 N.J. Super. 351, 356 (App. Div. 1993) ("'A prosecutor is not permitted to cast unjustified aspersions' on defense counsel or the defense." (quoting State v. Lockett, 249 N.J. Super. 428, 434 (App. Div. 1991))).

Defendant's false statements to police on the day of the incident were undoubtedly fair game for cross-examination and summation commentary. The Court has said "whether the asserted inconsistencies by a defendant are between two or more statements or between a statement and testimony at trial, the State may seek to impeach the validity of those statements." State v. Tucker, 190 N.J. 183, 190 (2007). The "use of such evidence [is limited] to issues of credibility and not substantive evidence on the issue of defendant's guilt or innocence." Id. at 191 (citing State v. Brown, 190 N.J. 144, 158 (2007)). The court is required to give a limiting instruction, which it did not do here. Ibid.; see Model Jury Charges (Criminal), "Credibility — Defendant's Statements at or Near Time of Arrest (To Be Used Only When Defendant Testifies)" (approved June 21, 2020).

Our point is that while the prosecutor was entitled to draw the jury's attention to defendant's false statements to police when assessing the credibility of defendant's trial testimony, he was not permitted to tip the scale in the State's favor by repeatedly telling jurors that defendant's trial testimony was not worthy of belief because defendant lied before, was lying again and was, simply put, therefore a liar. Nor was it permissible to tell the jury that it must believe a liar — defendant — in order to credit claims of self-defense or

11

defense of others and passion/provocation manslaughter.  The State always bore the burden to disprove those defenses whether or not defendant testified.

Because there were no objections to the summation at trial, the prosecutor's attack went unabated.  And, given the lack of any objections, the only close issue is whether the prosecutor's impropriety justifies reversal.  See, e.g., State v. Smith, 212 N.J. 365, 407 (2012) (noting the absence of any objection indicates defense counsel "perceived no prejudice") (citing State v. Timmendequas, 161 N.J. 515, 576 (1999)).  We think it does.

It was undisputed there was mutual combat in this case.  Both Skinner and Williams testified that Walker stopped the car at some point either because someone hit the car or threw something at the car.  Both said Walker got out of the car, approached the others and a fight ensued, initially with Ketler, but soon joined by defendant.  Neither Skinner nor the other State's witnesses saw defendant stab either man.  Williams clearly said defendant stabbed him in the abdomen, but he did not see defendant stab Walker.  In short, defendant's credibility as to the circumstances of the stabbing was the critical issue at trial.

The Rules of Professional Conduct (RPC) apply to assistant prosecutors. See, e.g., Marshall, 123 N.J. at 237 (applying RPC 3.4 to criticize the prosecutor's references to matters not supported by the evidence at trial); see also RPC 3.8 (setting forth special responsibilities of the prosecutor).  RPC

3.4(e) specifically prohibits an attorney in trial to "assert personal knowledge of facts in issue . . . or state a personal opinion as to the justness of a cause, the credibility of a witness, . . . or the guilt or innocence of an accused."

Additionally, we evaluate the prosecutor's repeated assertions that defendant lied during his testimony, and his decision to go one step further and call defendant a "liar" several times during his summation, with recognition of the special role of the prosecutor, and the additional weight accorded that role in the eyes of the jury. See Wakefield, 190 N.J. at 437 (noting "improper suggestions, insinuations, and, especially, assertions of personal knowledge [by the prosecutor] are apt to carry much weight against the accused when they should properly carry none" (quoting Berger v. United States, 295 U.S. 78, 88 (1935))). In this case, the prosecutor's improper summation comments compel reversal.

### III.

Even if we accord undue prejudicial effect to the prosecutor's summation, there were other trial errors that, combined with the prosecutorial impropriety, compel reversal. See, e.g., State v. Blakney, 189 N.J. 88, 97 (2006) (holding improper summation comments, together with defective limiting instructions, resulted in harmful error compelling reversal).

13

The judge charged the jury on the substantive elements of murder and passion/provocation manslaughter as to Walker's death, and attempted murder, attempted passion/provocation manslaughter and aggravated assault as to Williams, including principles of accomplice liability. The judge then charged the jury regarding the weapons offenses but omitted entirely that portion of the model charge for possession of a weapon for an unlawful purpose that deals with the lawful use of a weapon for a protective purpose. See State v. Kille, ___ N.J. Super. ___, ___ (App. Div. 2022) (slip op. at 16–17) (reversing conviction for possession of a firearm for an unlawful purpose because judge failed to provide instructions on protective purpose).

The judge then told the jury, "The indictment charges [defendant] with murder and attempted murder." Using the model jury charge, he explained self-defense and defense of another, but he never told the jury it also should consider those affirmative defenses if or when it considered the lesser-included charge of passion-provocation manslaughter.

We agree that having acquitted defendant of Walker's murder, it was imperative for the jury to understand the very same principles of self-defense and defense of another applied to their consideration of the lesser-included manslaughter offense. It was plain error for the judge to omit specific instructions advising the jury that it should consider the affirmative defenses

14

as to all the lesser-included offenses.  See State v. Gentry, 439 N.J. Super. 57, 67 (App. Div. 2015) ("Where there is sufficient evidence to warrant a self-defense charge, failure to instruct the jury that self-defense is a complete justification for manslaughter offenses as well as for murder constitutes plain error.").

The failure to charge the jury with that portion of the model charge dealing with use of a weapon for a protective purpose when providing instructions on defendant's possession of the knife for an unlawful purpose was also plain error.  Kille, slip op. at 16–17.

The combination of errors in this case, together with the prosecutor's improper summation, require reversal of defendant's convictions.  In light of our disposition, we need not consider the balance of defendant's arguments, including his claims of errors in the sentence.

Reversed and remanded for a new trial.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION